*606
 
 WOOD, P. J.—This
 

 is a proceeding to forfeit an automobile to the state. The notice of seizure and intended forfeiture proceedings, filed pursuant to sections 11612 and 11613 of the Health and Safety Code, alleged that one 1958 Chevrolet vehicle was seized on December 12, 1958, by the Division of Narcotic Enforcement pursuant to section 11611 of the Health and Safety Code.
 

 The General Motors Acceptance Corporation, in answering said notice, alleged that it was the owner of a contract of conditional sale of the automobile; that the contract and the interest of said claimant in the vehicle were created without any knowledge by the claimant that the vehicle was to be used for the purpose mentioned in the notice; that the claimant denied, upon information and belief, the allegations relative to the use of the vehicle for unlawfully transporting or possessing a narcotic.
 

 Louis Delaney and Jonah Delaney, in answering said notice, denied the allegations relative to the use of the vehicle for unlawfully transporting or possessing a narcotic. They alleged that the registered owner of the vehicle was Louis Delaney, doing business as Pico-Main Recreation; the legal owner was the General Motors Acceptance Corporation; the seizure was unlawful and without any probable cause; the officers in effecting the seizure violated the constitutional rights of the Delaneys relative to their immunity to unlawful search and seizures; Jonah Delaney, the minor son of Louis Delaney, was in lawful possession of the vehicle at the time of the
 
 arrest;
 
 the criminal proceeding filed against Jonah, charging a violation of section 11500 of the Health and Safety Code, was dismissed in the municipal court on the basis of lack of probable cause and the consequent unlawful search and seizure.
 

 In the present proceeding, the court found that the arrest of Jonah Delaney was without probable cause; that any evidence concerning the illegal use of the automobile for use, possession, or transportation of marijuana was obtained as the result of an illegal arrest and unreasonable search and seizure; that the objection of the legal owner to the introduction of any evidence of purported illegal use, possession, or transportation of marijuana on the ground that such evidence was obtained as the result of an illegal arrest and unreasonable search and seizure should be sustained.
 

 The judgment was that the People (plaintiff) take nothing by reason of the notice of seizure and intended forfeiture
 
 *607
 
 proceedings; and that the automobile be returned to the registered owner, Pico-Main Recreation.
 

 The People appeal from the judgment.
 

 Appellant argues to the effect that there was probable cause and that the arrest, search, and seizure were lawful; and that, considering the factual situation in the present case, the officers acted reasonably under the circumstances appearing to them at the time of the arrest and search.
 

 Deputy Sheriff Gonzales testified, in part, as follows: On December 12, 1958, about 2:10 p. m., he and Deputy Sheriff Douglass, who were in a sheriff’s automobile, were on a routine assignment of cheeking for child molestations near a school ground area. They were checking the Santa Ana underpass (pedestrian tunnel) “leading from the school grounds directly across the street where they [children] come out on the north side of the freeway.” A file in the sheriff’s office indicated that there had been reports that school children had been molested while they were in the underpass or as they came out of it. The deputies were assigned to check the area when the children were on their way to school about 9 a. m., and when they were returning from school between 2:30 and 3 :30 p. m. While they were cheeking that area about 2:10 p. m., they saw two persons in a 1958 Chevrolet automobile which was parked on Eastman Avenue (north of the Santa Ana Freeway) about 20 yards from the exit of the underpass. The school was south of the freeway. The parked automobile was facing south. The officers, who were traveling north, “pulled up” by the side of the parked automobile and stopped (with the officers’ automobile facing north). The officers did not know the occupants of the parked automobile and did not have any prior information regarding them or the parked automobile. Deputy Gonzales (witness) asked the two persons a few general questions. Jonah Delaney was sitting on the driver’s side of the automobile and one Ruiz was sitting next to Jonah. In response to a question as to whether they lived in that area, they replied in the negative. In response to a question as to whether they had ever been arrested, Ruiz replied, “Yes.” Ruiz stated that he had been arrested on a charge of rape. The officers told both persons to get out of the automobile for further investigation. In the course of a routine search of Delaney and Ruiz for weapons, Deputy Gonzales found what appeared to be a marijuana cigarette in the pocket of Delaney’s shirt. The officers arrested them, and later
 
 *608
 
 the Chevrolet automobile was impounded at the sheriff’s station.
 

 On cross-examination, Deputy Gonzales testified that the deputies asked Delaney and Ruiz what they were doing there; and that, in response to that question, it is possible they replied they came there to buy motorcycle parts.
 

 It was stipulated that a chemist would testify that the cigarette contained marijuana.
 

 The testimony of Deputy Sheriff Douglass corroborated the testimony of Deputy Gonzales with respect to the arrest, the conversation with the two persons, and the finding of the cigarette.
 

 No one was called as a witness on behalf of the answering claimants.
 

 When the presentation of testimony was concluded, the People offered the marijuana cigarette in evidence, and the attorneys for the legal and registered owners objected to the offer on the ground that the cigarette was obtained as the result of an illegal arrest and unreasonable search. The objection was sustained.
 

 The question as to whether there was probable cause was a question of law.
 
 (People
 
 v.
 
 Paul,
 
 147 Cal.App.2d 609, 619 [305 P.2d 996].) The testimony of the officers was uncontradicted (no evidence having been presented by the claimants with reference to the circumstances of the arrest). If the trial judge believed the uncontradicted testimony, then that testimony constituted the factual basis for the question of law as to whether there was probable cause for the arrest. The judge was not required, however, to accept that testimony as being correct, but he could have rejected portions of it. If he did not believe portions of their testimony, it cannot- be determined what portion or portions he disbelieved; and consequently it cannot be determined what the trial judge considered as the factual basis for the legal question as to probable cause. Under the circumstances here, however, it is reasonable to infer that the judge did not disbelieve the testimony of the officers. After the testimony had been presented, and while the judge was making comments regarding the admissibility of the cigarette in evidence, he said: “I am thoroughly familiar with the testimony of Officer Gonzales and Officer Douglass. I want to compliment them both for being good officers, but that isn’t the question before the court." Also, during said time while he was discussing the admissibility of the cigarette in evidence, he said: “You understand, Officer
 
 *609
 
 Gonzales and Officer Douglass, this is no reflection on you and you. It is a constitutional question. It is far more important than the arrest.” The judge did not assert or imply that he did not believe the officers, but on the contrary as above shown he commended them. It thus appears that the only reasonable inference that can be drawn from the record, with reference to what constituted the factual basis for the legal question of probable cause, is that the judge accepted the testimony of the officers as being correct but concluded as a matter of law that those facts did not constitute probable cause for the arrest.
 

 It is to be noted also that there was no evidence as to whether the officers had a search warrant or a warrant of arrest. Ordinarily when there is no evidence upon that subject, the existence of a warrant will be presumed (see
 
 People
 
 v.
 
 Parrara,
 
 46 Cal.2d 265, 268, 269 [294 P.2d 21]); but the circumstances in the present case are such that the only reasonable inference that can be drawn from the record is that the arrest and search were made without a warrant. After the testimony had been presented, and when the judge said that he would like to hear from the deputy attorney general as to the legality of the arrest, the deputy responded by arguing that there was reasonable cause for the arrest—he did not assert or imply that the arrest should be sustained on the ground that the existence of a warrant must be presumed. In
 
 People
 
 v.
 
 Prewitt,
 
 52 Cal.2d 330 [341 P.2d 1], thére was no evidence that the officers did not have a warrant. The court said therein, at page 336: “ [T]he People do not contend that the arrest should be sustained on the ground that the existence of a warrant must be presumed. Under these circumstances the only reasonable inference that can be drawn from the record is that the arrest, search, and seizure were made without a warrant. ’ ’
 

 It thus appears, in the present case, that even though there was no evidence that the officers did not have a warrant, the case should not be disposed of (in favor of the People) by presuming that the officers did have a warrant; but on the contrary, it should be inferred that the arrest was made without a warrant. Likewise, in the present ease, even though there was no statement by the trial judge that he did not believe the testimony of the officers, the question as to the factual basis for the legal question of probable cause should not be disposed of (in favor of the claimants) by assuming that the judge
 
 *610
 
 did not believe the officers; but, on the contrary and by reason of the circumstances here, it should be inferred that the factual basis for the legal question of probable cause was the testimony of the officers.
 

 The substance of the factual basis for the legal question of probable cause was as follows: There was a “police hazard” at the particular location where the arrest was made. That hazard was child molestation by unknown individuals. Records in the sheriff’s office showed that there were reports that children had been molested while they were in that underpass or as they came out of it. These officers were assigned the duty of checking the area near the school during the times children were going to and returning from school. The afternoon assignment for cheeking that area was between 2 ;30 and 3:30 p. m. About 2:10 p. m. on the day of the arrest, the officers saw two persons in a Chevrolet automobile which was parked about 20 yards from, and was facing, the exit of the underpass. The Chevrolet was on a street and in front of a house. The officers’ automobile was driven to a place by the side of the Chevrolet—the officers’ automobile was facing north and the Chevrolet was facing south. The officers asked the two persons certain questions, including questions as to whether the persons lived in that area, what they were doing there, and if they had ever been arrested. In response to the questions, the officers received information that the persons did not live in that area and that one of the persons had been arrested and convicted (Tr. p. 31) on a charge of rape. Officer Gonzales said that it was possible that the persons, in response to the question as to what they were doing there, said they came to buy motorcycle parts. There was no evidence that any motorcycle parts were in the area.
 

 Under the circumstances here, particularly in view of the duties assigned to the officers and the location of the Chevrolet near the exit of the underpass, the officers were justified in questioning the two persons relative to their identity and their purpose in being there at that time. In
 
 People
 
 v.
 
 Wiley,
 
 162 Cal.App.2d 836 [326 P.2d 823], it was said at page 839: “ "There is, of course, nothing unreasonable in an officer questioning persons outdoors at night.’ ” In that case the officers, about 8 p. m., saw two men in an automobile that was parked on a street and in front of a house. When the officers stopped their police automobile near the other automobile, three men who had been standing by the side of the parked automobile walked rapidly away. One of the officers stopped
 
 *611
 
 them. The other officer ordered the two men, who were in the parked automobile, to get out of the automobile. When one of the men got out, an officer saw something drop from his hand. Then the officers found two marijuana cigarettes on the street. At the police station they searched that man and found a marijuana cigarette in his shoe. In that case it was held that there was probable cause and that the officers were justified in making the arrest and search.
 

 In the present case the questioning was not at night, but it was done at a time when school children were about to come through the underpass, and it was done at a place where, according to sheriff’s reports, children had been molested. The officers were justified in asking the two persons to get out of the automobile. Also, after the persons were out of the automobile, the officers were justified in taking precautionary measures, by way of searching for weapons, to insure their own safety. (See
 
 People
 
 v.
 
 Martin,
 
 46 Cal.2d 106, 108 [293 P.2d 52].) In the present ease, the search for weapons was referred to as “patting him down.” It was in the process of “patting him down” that the cigarette was found in Jonah Delaney’s shirt pocket. It is thus apparent that the finding of the cigarette was incidental to the precautionary search for weapons. The officers had the right to make such precautionary search, and they were not required to overlook marijuana which came to their notice during such search. There was probable cause for the arrest.
 

 In view of the above conclusion as to probable cause, it is not necessary to discuss the People’s further contention that “the exclusionary rule” of the Cahan case (44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]) is not applicable in a ease of this kind.
 

 The judgment is reversed.
 

 Fourt, J., and Lillie, J., concurred.