[Crim. No. 7894.   Second Dist., Div. Two.   Feb. 19, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. VINCENT ARMAND HANDY, Defendant and Appellant.

Haskell J. Shapiro for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Edmund B. Mamer, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant was convicted of violation of Section 11530, Health and Safety Code (possession of marijuana). He has appealed from the judgment of conviction (order granting probation[1]).

---

[1]See Pen. Code, § 1237, subd. 1.

Officer James Grennan of the Los Angeles Police Department assigned to the Narcotics Division, had received information from a reliable informant that defendant was dealing in marijuana and that he had offered to sell informant five kilos of marijuana or any part thereof. The first conversation was by telephone and about two weeks before the arrest; the second in person approximately a week before defendant was arrested. The informant told Officer Grennan that defendant was to receive five kilos of marijuana on the 22d of February, 1961. Officer Grennan and his partner, Sergeant Hanks, went to defendant's residence on February 28 at approximately 10 o'clock in the morning. They rang the doorbell which was answered by defendant. The officers identified themselves as police officers and were invited in by defendant. After entering the house, they again identified themselves, stating that they worked in the Narcotics Division and had information that he was dealing in marijuana. Defendant stated that this was not true.

Officer Grennan asked defendant if he had ever seen marijuana and if so, when he had last seen any. Defendant replied that he had seen some approximately two weeks prior to that time. When asked by the officer whether he had ever seen a kilo of marijuana, defendant stated that he had not seen a kilo since he had been out of the army; that while in the army he had on one occasion bought a kilo of marijuana. Officer Grennan requested permission to search his home for marijuana; defendant declined to give permission. It had been the officer's experience that the only time that a person dealing in narcotics would not be in possession of any contraband would be if his source of supply had run out or he had been arrested. According to the officer's information, defendant had not been arrested.

When defendant declined to permit the officers to search the premises, he was placed under arrest. The officers proceeded to search the house and in a dresser drawer in defendant's bedroom they found a cellophane bag containing a quantity of green leafy material that proved to be marijuana. Defendant then stated that the bag containing the marijuana was his and that it was the remainder of half a can he had bought for his own use. He said that he had smoked marijuana for the past 20 years.

The marijuana was received in evidence over defendant's objection on the ground that its discovery was the product of an illegal search and seizure. It is not disputed

that Officer Grennan received his information as to defendant's activities from a reliable source. This information was sufficient to justify defendant's arrest on February 22, the date on which he was to receive delivery of the five kilos of contraband. (*People* v. *Moore*, 154 Cal.App.2d 43, 45 [315 P.2d 357], and cases there cited.) Had defendant been so arrested it would have been proper as an incident thereto for the officers to have searched the house and to have seized the contraband there found. (*Id.*, p. 46.) But the officer did not act upon the information until February 28, a period of five or six days. This delay was due, according to the officer's testimony, to the fact that he was busy with other duties, the nature of which he could not recall without reference to his log book which he did not have in court. The officer, according to his testimony, did not put this matter off for any period of time or put it out of order. He pursued it at the first opportunity he was free from other matters. He was mindful of the information that defendant was a dealer in marijuana and his experience that dealers were ordinarily in possession of narcotics unless they had been arrested or their supplier had run out of contraband; and to his knowledge defendant had not been arrested. The officer testified that it was his belief at the time he went to defendant's home the defendant would still be in possession. In this factual setting it was for the trial court to determine whether the officer was acting in good faith in reliance upon the information that he had received from the informer when he went to defendant's home on February 28, placed him under arrest, and then searched his household. The trial court impliedly determined that the officer was acting in good faith and reasonably relied upon the information at hand; that the arrest and search were legal; and that the contraband there found was admissible in evidence. We cannot say as a matter of law that the trial judge did not have sufficient basis for such implied finding.

■■ Defendant contends that his arrest without a warrant and the search of his premises were illegal and the contraband thus discovered inadmissible in evidence on the theory that the police waited an unreasonable time after receiving the information from the informer before they took action. In the interest of accurately reflecting his position we quote from his reply brief: "Defendant's specific contention is that as a matter of law the probable cause that arose when the police received their information from the reliable informant was vitiated by the delay of one week which occurred before

defendant was arrested because it was no longer reasonable for the police officers, after waiting a week, to arrest the defendant and to search his premises without obtaining either a search warrant or a warrant for defendant's arrest.'' In support of his contention he argues: ''Assuming that defendant were a dealer in narcotics and that the reliable information was correct and that defendant was to receive five kilos[2] of marijuana on the 22nd, then it is unreasonable for police officers, experienced in narcotic matters to believe that the five kilos of marijuana would still be on the defendant's premises on the 28th of the month. The very reason why police officers usually arrest and search a person within twenty-four hours after receiving their reliable information, and without a warrant, is that they fear if they wait a week the evidence may be gone. Here, the fact that the officers waited a week indicates that they did not have the type of belief in the guilt of the defendant which would warrant them acting immediately.'' In making this argument defendant is actually arguing a factual question and, contrary to the established principles of appellate review, he fails to give credence to evidence the truthfulness of which is implicit in the court's ruling and he draws inferences at variance with those drawn by the trier of fact. To illustrate: defendant says that it is unreasonable for police officers to believe that if a dealer in narcotics received five kilos of marijuana on the 22d of the month, he would still have some of the contraband on his premises on the 28th. The officer testified specifically on this question:

''Q. Well, were you of the belief that at a week later that the defendant would still be in possession? A. Yes, sir; yes, sir.

''Q. And do you have any experience as a narcotics officer with the likelihood of a defendant being in possession of marijuana at a time a week later, if he is in possession at the beginning of that interval of time, . . .?''

The officer replied, ''Well, it has been my experience that a person dealing in narcotics, about the only time they wouldn't be in possession of any narcotics would be if their source of supply had run out or if they had been arrested.'' He was then asked, ''To your knowledge, had this defendant yet been arrested at the time you approached the premises?'' Answer: ''No, sir.'' The information that defendant was a dealer in narcotics; that it was the officer's experience that dealers in contraband were ordinarily in possession thereof;

---

[2] A kilo is 2.2046 pounds.

and also that the informant had advised the officer that the defendant was to receive on February 22 five kilos of marijuana, which would be a little more than 11 pounds and that it would likely take a substantial period of time to dispose of that large quantity, all tend to support the officer's testimony that he believed the ''defendant would still be in possession'' when he went to his home on February 28. Implicit in the judge's ruling is his belief in the truthfulness of this testimony. It is thus apparent that defendant's conclusion that it was unreasonable for the police officers to believe that defendant would still be in possession of marijuana on the 28th is contrary both to the specific testimony of the officer and the inferences reasonably to be drawn in support thereof.

A like weakness appears in defendant's conclusion that the fact that the officers waited a week after receiving the information before they contacted the defendant indicates that they did not have faith in the information they had received which would justify their acting immediately. On this point the Reporter's Transcript reveals the following:

''Q. I might ask you this specific question: Did you go to make this arrest at what you considered your earliest opportunity? A. Yes, sir. I believe it was the first free time I had to conduct this investigation, yes, sir.

''Q. To your knowledge, did you put it off for any period of time or put it out of order? A. No. I don't recall putting it out of order, no, sir. It was just one of those things, it was information I was in receipt of and my first opportunity I was free from other matters to handle this, I did so.''

It is thus apparent from this testimony that the officer handled this matter in due course; that it was not put out of order; and that whatever delay there was in pursuing the information furnished by the informant was due to the pressure of other police responsibilities. There is no support whatever for defendant's conclusion that the delay in pursuing the matter in question was in any degree attributable to a lack of confidence in the reliability of the information that had been furnished the officer.

Defendant also argues: ''The fact that Officer Grennan waited a week before acting on his information and then engaged in conversation with the defendant regarding narcotics rather than arresting him immediately indicates that Officer Grennan himself did not believe that he had sufficient probable cause to arrest the defendant without a warrant based solely upon the information he had received a week

prior. If probable cause existed on the 28th when Officer Grennan went to defendant's home then there would be no need for the officer to ask permission from defendant to search the premises and there would be no need to engage in conversation with the defendant regarding narcotics prior to placing him under arrest.'' Here again defendant draws an inference contrary to the good faith action on the part of the officer rather than an inference in harmony with proper and reasonable police procedure. Any experienced police officer knows that it is one thing to establish probable cause for making a search or an arrest but quite a different matter to produce evidence that will result in a conviction. Asking defendant's permission to search the premises was simply an obvious courtesy and an appropriate step in gathering evidence for defendant's later trial. It is not an unusual thing for an accused to consent to a search and it was in the interests of effective police work for the officer to request permission to search defendant's house. Since it is the rule that a reviewing court must indulge reasonable inferences in support of the trial court's findings and judgment rather than inferences that would be adverse to the court's ruling, it follows that we must accept the inference in harmony with proper police administration rather than the inference suggested by defendant.

Defendant contends that since the officers did not attempt to secure a search warrant although they had ample time to do so between February 22d and the 28th, there was an illegal search and seizure. That argument was considered and rejected by this court in *People* v. *Sayles,* 140 Cal.App.2d 657 [295 P.2d 579]. ▮ At page 660 we stated: ''The claim that failure to procure a search warrant, given reasonable time so to do, precluded a search as an incident to the arrest, was rejected by the Supreme Court in *People* v. *Winston,* 46 Cal.2d 151, 162-163 [293 P.2d 40]. The court there said: 'Defendant unavailingly argues that here the police officers had ample time to procure a search warrant and therefore such warrant was required in order to validate the search and seizure of the incriminating evidence at the time of his arrest. (*Trupiano* v. *United States,* 334 U.S. 699, 708 [68 S.Ct. 1229, 92 L.Ed. 1663].) In *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653], it was held that a search of the defendant's premises incident to his lawful arrest at those premises was not unreasonable.' In the cited case of *United States* v. *Rabinowitz,* 339 U.S. 56, 65-66 [70 S.Ct. 430, 94 L.Ed. 653], it was observed: 'It is appropriate to note that the

Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that *Trupiano* v. *United States,* 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case.' '' In accord is *People* v. *Dupee,* 151 Cal.App.2d 364, 367-368 [311 P.2d 568].

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied March 9, 1962, and appellant's petition for a hearing by the Supreme Court was denied April 11, 1962.