[Crim. No. 8068. Second Dist., Div. Two. Apr. 19, 1962.]

THE PEOPLE, Plaintiff and Appellant, v. JOHN REED, Defendant and Respondent.

Stanley Mosk, Attorney General, William B. McKesson, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Plaintiff and Appellant.

Ellery E. Cuff, Public Defender, Forrest Latiner and James L. McCormick, Deputy Public Defenders, for Defendant and Respondent.

ASHBURN, J.—The People appeal from an order granting defendant's motion under section 995, Penal Code, to set aside the information charging defendant with possession of marijuana in violation of section 11530, Health and Safety Code. The basis of the ruling seems to be that indispensable evidence was procured by an unreasonable search of defendant's person and seizure of the proscribed marijuana found on him. The trial judge remarked that "it is a borderline case and we might as well stop it now if it can't possibly result in a conviction," and, "[l]et's get a new transcript."

▮▮▮▮ On August 12, 1961, at about 8:45 p.m., Police Officers Burke and Kofahl were driving west on 103d Street in Watts, Los Angeles County, and observed a 1950 Studebaker sedan coming east on the same street. It pulled into a parking lot, stopped, backed into and across 103d Street, causing several oncoming cars to stop rapidly to avoid hitting it. The Studebaker then went west on 103d Street to Success Street, where it turned north to 102d Street, at which point it was stopped by the officers. Kofahl asked defendant to step to the rear of the car and both officers there talked to him. Burke "asked him for identification and if he had a driver's license," to which he replied, "No, I've no identification." Burke then make a "cursory search" of him and felt a packet of papers in his shirt pocket; removing it he noticed it was brown cigarette papers. Asked if "he smoked any weed—indicating marijuana"—Reed said, "I do"; also that he had none on him. To an inquiry as to where he got it he said, "I'm not about to tell you." Asked if he had any weed he said, "No, but I bought a can approximately one week ago, but I don't have any left." The officers decided to arrest him and take him to Watts substation "for investigation due to the fact that he had no identification and he couldn't even prove his true identity" (quoting Officer Burke's testimony); this they did.

The officers had witnessed the commission of a misdemeanor by Reed—backing out of private property without yielding the right of way to oncoming traffic (Veh. Code, § 21804) and he was subject to arrest without a warrant under Penal Code section 836, subdivision 1 (5 Cal.Jur.2d, § 8, p. 155). After the officers had talked with him he was also subject

to arrest under subdivision 3 of the same section—"reasonable cause to believe that the person to be arrested has committed a felony," through purchase and possession of a can of marijuana a week before. (See *People* v. *Rios,* 46 Cal.2d 297, 298 [294 P.2d 39] ; *People* v. *Handy,* 200 Cal.App.2d 440, 444-445 [19 Cal.Rptr. 409].) Indeed, an arrest for the misdemeanor was imperative, for the officers had witnessed the commission of the offense (5 Cal.Jur.2d, § 7, p. 155). Section 40302, Vehicle Code provides: "Whenever any person is arrested for any violation of this code, not declared to be a felony, the arrested person shall be taken without unnecessary delay before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the place where the arrest is made in any of the following cases: (a) When the person arrested fails to exhibit his driver's license or other satisfactory evidence of his identity. . . ."[1] Officer Burke's terming their taking him into custody as an arrest "for investigation" is unimportant, for the commission of the misdemeanor had been witnessed by the officers, the law impliedly commanded an arrest, and section 40302 required that the offender be taken before a magistrate promptly. *People* v. *Knox,* 178 Cal.App.2d 502, 513 [3 Cal. Rptr. 70] : "The knowledge and the information of the officer at that time was ample to meet the statutory test. It is true that at the trial of this cause the officer testified that he had been in doubt as to whether appellant was guilty of a violation of said section 501 of the Vehicle Code. It is not the actual state of the officer's mind that is determinative. It is the circumstances that determine the right to arrest, and if they be such as to constitute reasonable cause for believing that a felony has been committed the officer may arrest, even though he has some doubt about the matter."

There was no impropriety in the questioning of defendant by the officers immediately after stopping him. His conduct had been quite unusual, a departure from normal activity suggesting that the selection in the middle of the block of another street upon which to travel in the same direction defendant was already going must have had some immediate cause. Was it the approach of police and a sense of guilt and a desire to avoid "the law"? Or was it intoxication or some other form of aberration? The police had a right to

---

[1]Section 40302, not 40303, or 40304, or 40305, or 40307, is applicable here.

inquire and this they did in a proper way. (See *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855] ; *People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Bouchard,* 161 Cal.App.2d 302, 305 [326 P.2d 646] ; *People* v. *One 1958 Chevrolet,* 179 Cal.App.2d 604, 611 [4 Cal.Rptr. 128] ; 44 Cal.Jur.2d, § 31, p. 320.) A cursory search was also permissible in the circumstances (*People* v. *One 1958 Chevrolet, supra,* at p. 611; *People* v. *Jones,* 176 Cal.App.2d 265, 267 [1 Cal. Rptr. 210] ; *People* v. *Dewson,* 150 Cal.App.2d 119, 130 [310 P.2d 162] ; *People* v. *Davis,* 188 Cal.App.2d 718, 720, 722-723 [10 Cal.Rptr. 610]) and it properly included the person as well as property (*People* v. *Dewson, supra,* p. 130; *People* v. *Smith,* 142 Cal.App.2d 287, 294 [298 P.2d 540]). In *People* v. *Stewart,* 189 Cal.App.2d 176, 179 [10 Cal.Rptr. 879], it was said : "In any event, it would appear here that the officers were justified in formally arresting the appellant under a proper interpretation of Penal Code, section 842, and it would further appear that having so arrested the appellant, they were justified in searching him. Any officer who, when arresting an unknown person, fails to search that person before commencing to transport him to jail would be derelict in common caution and in all probability would experience some unpleasantness."

This search revealed brown cigarette papers such as are used in making marijuana cigarettes. The police were not bound to ignore them. Their discovery prompted reasonable inquiry as to whether defendant "smoked the weed" and his statement that he had bought a can of it approximately a week before and had used it revealed a felony. At this point the officers had a right to make a thorough search on the basis of reasonable cause to believe a felony had been committed (Pen. Code, § 836, subd. 3) had they seen fit to do so. (*People* v. *Jackson,* 164 Cal.App.2d 759, 762 [331 P.2d 218].) The lapse of a week since the commission of the crime would not be important for the reason, among others, that it was a circumstance which suggested the probability of present possession even though denied by defendant (cf., *People* v. *Rios, supra,* 46 Cal.2d 297, 298; *People* v. *Handy, supra,* 200 Cal. App.2d 440, 443-444).

At the police station a thorough search of defendant's person was made. Again there was no impropriety. Since 1872 section 1412, Penal Code, has provided : "When money or other property is taken from a defendant, arrested upon a

charge of a public offense, the officer taking it must at the time give duplicate receipts therefor, specifying particularly the amount of money or the kind of property taken; one of which receipts he must deliver to the defendant and the other of which he must forthwith file with the clerk of the court to which the depositions and statement are to be sent. . . ." The Criminal Practice Act of 1851 contained substantially the same provision in section 607 (Stats. 1851, ch. 29, p. 280). This is long-continued statutory recognition and sanction of a right to search a prisoner and take his personal property from him when booking him at the police station. *Bruce* v. *Sibeck,* 25 Cal.App.2d 691 [78 P.2d 741], speaking of a New York case in which Mr. Justice Cardozo wrote the opinion, says: "It is there held that the statutory immunity from unreasonable searches and seizures relates only to such as are unreasonable in the light of common-law traditions. A seizure of property found upon one under lawful arrest is not limited to things subject to be taken under a search warrant when there is no arrest of the possessor. Search of the person is unlawful only when the seizure of a body is a trespass, and the purpose of the search is to discover grounds as yet unknown, for arrest or accusation. Constitutional protection against self-incrimination does not prevent the use in evidence of articles taken from one under lawful arrest. In the New York case the property seized consisted of certain letters.

"The annotations found in the New York case in A.L.R., *supra,* begin with the general statement, as follows: 'The right, without a search warrant, to search the person of one lawfully arrested, and to seize articles found on him, or in his custody, such as weapons, evidence of crime charged, etc., is well established.' " (Pp. 697-698.)

■ *People* v. *Woods,* 139 Cal.App.2d 515, 525 [293 P.2d 901] : "It must be recognized that persons about to enter jails or penal institutions may be examined by the custodian of such institutions for the purpose of preventing the bringing in of weapons and contraband. When this examination is reasonable and not conducted in a brutal or shocking manner, there is no constitutional inhibition. The right of peace officers to search persons lawfully arrested and to seize things connected with the crime is well established." (See also *People* v. *Hutson,* 177 Cal.App.2d 595, 599 [2 Cal.Rptr. 438] ; annotations in 32 A.L.R. 676, 680, and 82 A.L.R. 782, 783.)

■ Defendant was wearing a jacket; the officer felt

the pockets and other parts of it; below the left pocket he felt a round object in the lining, then found the pocket was torn out and asked defendant the purpose of that; Reed replied, "To stash narcotics," "or if the Police should stop him." Asked what he had in the round object in the bottom of the jacket, he said: "I don't know what it is." Officer Burke then removed from the jacket a brown paper-wrapped cigarette containing marijuana, the subject of the complaint on hearing. Defendant was thereupon arrested for its possession. Though he said he knew nothing about the cigarette, that the jacket was not his and had been borrowed a couple of weeks before and that the cigarette was not marijuana but tobacco, the magistrate, Judge Stahlhut, was not bound to accept these assertions. She was charged with the duty of determining whether probable cause was shown; to this end the evidence was to be weighed by her; the facts other than the last-mentioned assertions of defendant plainly show probable cause. ▮ "Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused." (*Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 183 [281 P.2d 250].) ▮ That duty having been discharged by the magistrate, the superior court judge had no power upon the motion under section 995 to reweigh the evidence, and was not authorized to set aside the information where there was "some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Bompensiero* v. *Superior Court, supra,* p. 183.) ▮ "On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is to determine only whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. ▮ A court may not substitute its judgment as to the weight of the evidence for that of the magistrate. ▮ If there is some evidence to support the information, the courts will not inquire into its sufficiency. ▮ Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed. (*People* v. *Platt,* 124 Cal.App.2d

123, 130-131 [268 P.2d 529].)'' (*People* v. *Fitch,* 189 Cal. App.2d 398, 402 [11 Cal.Rptr. 273].) ''The fact that the trial judge feels, perhaps correctly, that the evidence in the grand jury transcript will not result in an ultimate conviction of the defendants can have no bearing upon his legal responsibility to uphold an indictment if, as is said in *Bompensiero* v. *Superior Court, supra,* at pages 183-184: '. . . there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.' '' (*People* v. *Olf,* 195 Cal.App.2d 97, 103 [15 Cal.Rptr. 390].)

The trial court plainly erred in this instance. Order setting aside the information is reversed.

Fox, P. J., and Herndon, J., concurred.