[Crim. No. 14069.   Second Dist., Div. Three.   Dec. 20, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND TELLEZ, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne E. Graber, Deputy Attorney General, for Plaintiff and Respondent.

MOSS, J.—Defendant was convicted of selling (count I) and possessing (count II) heroin in violation of sections 11501 and 11500 respectively of the Health and Safety Code. After trial to the court he was sentenced to state prison on each count, the sentences to run concurrently. He appeals from the judgment on the ground that the heroin which provided the basis for the conviction for possession charged in count II was the product of an illegal search. He does not question the conviction for selling charged in count I.

Count I relates to a sale of heroin made by defendant to a police informant, Frank Gill, in the presence of Deputy Sheriff Mary E. Marez at noon on February 7, 1967, in defendant's car on the parking lot of the Royal Market in Culver City. Deputy Marez and Gill entered defendant's car when he arrived; Deputy Marez gave Gill $20 of state-advanced funds, which he handed to defendant. Defendant in turn removed from his mouth two balloons, which he gave to Gill. The balloons contained heroin.

Two weeks later, on February 21, 1967, two officers assigned to the narcotics bureau of the Los Angeles County sheriff's department and three other officers went to defendant's residence to serve a warrant for defendant's arrest on the charge of selling heroin. This charge presumably related to the above described sale. The officers did not have a search warrant. Without identifying themselves, knocking, or announcing their presence, the officers entered through the rear door. (There was a conflict of testimony as to whether the door was open before the first officer entered.) They went through the kitchen and into the front room, where defendant was sitting in an armchair in the presence of his wife. The officers placed defendant under arrest, handcuffed him, and advised him of his rights. The five officers then proceeded to search defendant's apartment without his permission. Forty minutes later one of the officers saw a red balloon in a light fixture on a bedroom wall. Defendant, when asked if the balloon were his, stated, ''Yes.'' The balloon contained heroin. The balloon with its contents and defendant's admission that it was his were received in evidence over defendant's objection that the entry was unlawful and that the search which followed was unreasonable.

Defendant contends that the search was unlawful because the officers entered without complying with the requirement of section 844 of the Penal Code that an officer explain his purpose and demand admittance before breaking into a house. It has been held that section 844 does not apply where the entry is through an open door. (*People* v. *Bradley,* *(Cal. App.) 70 Cal.Rptr. 339; see *United States* v. *Williams* (6th Cir. 1965) 351 F.2d 475, 477 [383 U.S. 917, 15 L.Ed.2d 671, 86 S.Ct. 910] ; cf. *People* v. *Rosales,* 68 Cal.2d 299, 302 [66 Cal. Rptr. 1, 437 P.2d 489].) In this case, one officer testified that the door was open when the first officer entered and another testified that the door was opened by the first officer to enter.

*A hearing was granted by the Supreme Court on October 23, 1968.

The objection as to the lawfulness of the entry and the reasonableness of the search that followed were argued together. The trial judge received the balloon found in the search in evidence without ruling separately on the objections. Although defendant based his objection in part on the legality of the entry, none of the parties explored the question ·of whether the door was open or closed and the trial judge made no finding thereon. We need not determine whether under the facts of this' case the entry was lawful because we have concluded that regardless of the lawfulness of the entry the search was unreasonable.

█ ''The 4th Amendment forbids every search that is unreasonable and is construed liberally to safeguard the right of privacy '' (*United States* v. *Lefkowitz,* 285 U.S. 452, 464 [76 L.Ed. 877, 882, 52 S.Ct. 420, 82 A.L.R. 775].) █ A search is lawful as an incident to a valid arrest when it is limited to the premises where the arrest is made, has a definite object and is reasonable in scope. (*People* v. *Cockrell,* 63 Cal. 2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116]; see *Preston* v. *United States,* 376 U.S. 364, 367 [11 L.Ed.2d 777, 780, 84 S.Ct. 881].) Here the arrest, having been made pursuant to a warrant, was valid. The search was limited to the premises where the arrest was made. █ However, as we shall explain, the search did not have a definite object and was unreasonable in scope.

In *People* v. *Jackson,* 198 Cal.App.2d 698 [18 Cal.Rptr. 214], a narcotics officer, working undercover, purchased narcotics from the defendant at his home on February 18. On September 18 of the same year seven officers went to the defendant's home with an arrest warrant based upon the prior sale. The officers also had information that the defendant was placing his narcotics back of the chicken coop and that there was considerable traffic in and out of that location. They had no search warrant. Upon arrival, the officers handcuffed the defendant and searched the premises including the area around the chicken coop. While looking around they found marijuana in a bag lying open on top of a radio near the front door and more in plain view on the floorboard of the defendant's car. They also found some bags of marijuana on the trash pile behind the chicken coop. The court concluded that the searches were not lawful as incident to the arrest under warrant because the searches were not connected with the specific offenses for which the arrest was made: ''The sale was completed on February 18, 1959, and the evidence of that crime was already in the possession of the police. Any nar-

cotics discovered seven months later would not be instrumentalities or evidence of the particular crime for which the arrest was made. The motivation could not have been the hope of obtaining evidence of that offense and, in the absence of probable cause for arrest upon an additional charge, the searches were unauthorized. Rather, they were general and exploratory and conducted for the sole purpose of discovering incriminating evidence—the type of search that is condemned in *People* v. *Mills,* 148 Cal.App.2d 392, 399-402 [306 P.2d 1005], and in *People* v. *Schaumloffel,* 53 Cal.2d 96, 100-101 [346 P.2d 393]."[1]

The same reasoning applies here even though the search took place two weeks rather than seven months after the sale which was the basis for the issuance of the arrest warrant. The sale had been made in the presence of a police officer who was available to testify and the heroin sold was in the possession of the police. Therefore, the motivation in the search could not have been to find evidence of the earlier sale.

██ The Attorney General suggests that it is reasonable to assume that the officers were searching for evidence that would corroborate the prosecution's case such as a large cache of heroin or packaging devices or narcotics paraphernalia. Contrary to the cases relied upon by the Attorney General in support of this suggestion, there is here no evidence that defendant had engaged in any illegal activity in the place searched as in *People* v. *Winston,* 46 Cal.2d 151, 154 [293 P.2d 40], and *People* v. *Carella,* 191 Cal.App.2d 115, 132-133 [12 Cal.Rptr. 446], or that defendant's action upon the arrival of the police corroborated information given to the police that defendant had narcotics in his home as in *People* v. *Ghimenti,* 232 Cal.App.2d 76 [42 Cal.Rptr. 504], or that the police were searching for the items which were the subject matter of the crime for which the defendant was being arrested as in *People* v. *Gallup,* 253 Cal.App.2d 922, 926-928 [61 Cal.Rptr. 709]. There being no evidence in the record that the arresting officers could reasonably have believed that the search would produce evidence material to the earlier sale, we are left with the conclusion that the sole motive for the search was to find evidence of other crimes and therefore that the scope of the search as an incident to the arrest under the

---

[1]The court went on to hold, however, that the marijuana which was in plain view was not the product of a search, and that the marijuana found outside was not the product of an unreasonable search because the protection of the Fourth Amendment as applied to the states through the Fourteenth Amendment does not extend to "open fields."

warrant was too broad to meet the test of reasonableness. (*People* v. *Schaumloffel, supra,* 53 Cal.2d 96, 100-101; *People* v. *Mills, supra,* 148 Cal.App.2d 392, 399-402; *United States* v. *Lefkowitz, supra,* 285 U.S. 452;[2] *Jack* v. *United States* (9th Cir. 1967) 387 F.2d 471; see *People* v. *Baca,* 254 Cal.App.2d 428 [62 Cal.Rptr. 182].)

■ The Attorney General next contends that the sale of heroin two weeks earlier in defendant's car provided probable cause for the officers to believe that the defendant had possession of heroin in his home, and therefore that the search was incidental to his valid arrest on that charge. This argument is premised upon the probability that a seller of narcotics will usually be in possession of more narcotics in order to have some to sell at a future date. The inference to be drawn from the fact that a person has committed an offense in the past does not of itself provide probable cause to believe that he is presently guilty of a similar offense. (*People* v. *Sanders,* 46 Cal.2d 247, 250 [294 P.2d 10]; see *People* v. *Amos,* 181 Cal. App.2d 506, 509 [5 Cal.Rptr. 451].) In *People* v. *Handy,* 200 Cal.App.2d 440 [19 Cal.Rptr. 409] and *People* v. *Reed,* 202 Cal.App.2d 575 [20 Cal.Rptr. 911], relied upon by the Attorney General, unlike the case at bar, the probability of present possession was supported not only by the fact that the arresting officers knew that the defendant had been in possession one or two weeks before the arrest but, in *Handy,* by information that the defendant was a dealer in narcotics and, in *Reed,* by the fact that at the time of the search cigarette papers of the kind used in rolling marijuana cigarettes were found on the defendant's person.

■ Lastly, the Attorney General argues that the officers did not find the balloon in the lamp fixture in the bedroom as the result of a search because the balloon was in plain view. A search implies that the object searched for has been hidden or intentionally put out of the way; the observation of that which is in plain view is not a search. (See Witkin, Cal.

---

[2]In *Lefkowitz,* federal agents raided an illegal liquor business pursuant to an arrest warrant and seized a number of items, including business records, which they found after a thorough search of the premises. The court suppressed the evidence because the search was too broad and alternatively because the items seized were mere evidence under the rule of *Gouled* v. *United States,* 255 U.S. 298 [65 L.Ed. 647, 41 S.Ct. 261]. Although *Gouled* has been apparently overruled (*Warden, Maryland Penitentiary* v. *Hayden,* 387 U.S. 294 [18 L.Ed.2d 782, 87 S.Ct. 1642]), *Lefkowitz* still stands for the proposition for which it is cited because reliance by the court on the "mere evidence" rule was an alternative and superfluous ground for exclusion of the evidence. (*People* v. *Thayer,* 63 Cal.2d 635, 641 [47 Cal.Rptr. 780, 408 P.2d 108].)

Evidence (2d ed. 1966), § 105, p. 101.) The balloon containing heroin which was the subject of count II of the information was found only after a forty-minute search by several officers, in a light fixture located in a different room from that in which defendant was arrested. The ''plain view'' doctrine has no application to these facts.

The judgment as to count I is affirmed, and as to count II is reversed.

Ford, P. J, and Cobey, J., concurred.