[Civ. No. 31870. First Dist., Div. Four. Jan. 29, 1973.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
CHARLES D. MURRAY II, Real Party in Interest.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Robert R. Granucci and Thomas A. Brady, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Harkjoon Paik, Public Defender, D. Richard Barelli and Frank W. Dice, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**BRAY, J.**\*—Petition for writ of mandate to direct the Monterey County Superior Court to set aside its order suppressing evidence.

### Questions Presented

1. The police officer was justified in detaining defendant and in examining the paper bag dropped by defendant.

2. There was probable cause to arrest defendant.

3. The booking search was proper.

### Record

An information was filed in the Monterey County Superior Court charging defendant Charles D. Murray II in count one with violation of Business and Professions Code section 25662 (possession of alcoholic beverages by a minor in a public place, a misdemeanor) and in count two with violation of Health and Safety Code section 11530 (possession of marijuana). Thereafter defendant moved to suppress as evidence a bag of marijuana and a bag containing two bottles of wine and one bottle of whiskey. The court granted the motion as to the marijuana on the ground that defendant should have been issued a citation rather than being arrested but denied the motion as to the liquor. Defendant pleaded guilty to count one and was fined $35. He pleaded not guilty as to count two. The People then brought this petition for writ of mandate to direct respondent court to set aside the order suppressing evidence.

### Facts

On March 31, 1972, Monterey Police Officer James Roseman was on a routine patrol when he noticed a group of juveniles near a liquor store. Since Officer Roseman felt that it was not ordinary for a group of juveniles to congregate in such a place, he drove his car around the block and then approached the group to inquire of their business in the area. Upon asking them what they were doing, the juveniles stated that they were waiting for someone, but that they would move on. At the time the group started to disperse, defendant Charles Murray was seen by the officer coming out of a liquor store. He was carrying a paper sack. Defendant proceeded toward

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

the officer and the group of juveniles until he saw Officer Roseman. He then made an abrupt turnabout and walked to the other side of the liquor store where he placed the paper sack over a retaining wall adjacent to the store. Having done this, Murray once again began walking toward the officer and the group of juveniles.

Considering that defendant's actions were suspicious, Officer Roseman thereupon started a conversation with Murray and asked him for his identification. Murray produced a driver's license which showed that he was 19 years old. Officer Roseman, accompanied by defendant, then went to the retaining wall to determine the nature of the object which had been deposited there. On the other side of the wall, there was a paper bag which contained one bottle of whiskey and two bottles of wine. There were no similar items behind the wall. Officer Roseman then placed Murray under arrest, charging him with a violation of section 25662 of the Business and Professions Code (a minor in possession of alcohol). Defendant was transported to the Monterey City jail where he was booked. The booking procedure required that he empty all his pockets, that he be searched, fingerprinted and photographed, and then be allowed to make a telephone call. During the search conducted pursuant to the booking, the police removed a baggie from his jacket which contained marijuana. Defendant was thereupon also charged with possession of marijuana, under section 11530 of the Health and Safety Code.

## 1. *The detention and arrest.*

The law in California on the subject of temporary detention for investigation may be briefly summarized. ■ Circumstances short of probable cause for an arrest may justify temporary detention of a person by a police officer for investigation and questioning. (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin* (1956) 46 Cal.2d 106, 108 [293 P.2d 52].) The circumstances which allow temporary detention are those which "indicate to a reasonable man in a like position that an investigation is necessary to the discharge of his duties." (*People* v. *Gibson* (1963) 220 Cal.App.2d 15, 20 [33 Cal. Rptr. 775].)

In *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], the court sustained a police officer's accost and frisk of loiterers on the street who were behaving suspiciously and were suspected by the officer of planning a holdup. The court recognized "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though

there is no probable cause to make an arrest." (392 U.S. at p. 22 [20 L.Ed.2d at pp. 906-907].) Explicit in the decision is approval of police investigation "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . . ." (392 U.S. at p. 30 [20 L.Ed.2d at p. 911].)

■ The validity of a particular temporary detention involves a determination of fact. However, certain requirements have been set out. "First, there must be a rational suspicion by the peace officer that some activity out of the ordinary is or has taken place. Next, some indication to connect the person under suspicion with the unusual activity. Finally, some suggestion that the activity is related to crime." (*People* v. *Henze* (1967) 253 Cal.App.2d 986, 988 [61 Cal.Rptr. 545].)

■ Here, the circumstances justified the officer in detaining and questioning the other juveniles and defendant. The area was one in which such groups usually did not congregate. When first seen, defendant, with a paper bag in his hand, was walking out of a liquor store toward the officer and the group of juveniles. However, apparently upon noticing the officer, the defendant made an abrupt change of direction, walked to the retaining wall, and deposited over it the paper bag which he had been carrying. He then started to walk toward the group once again. When defendant's conduct is appraised in the light of these facts, it reasonably suggests the possibility that he did possess something which was in violation of law. Defendant's contention that he could just as well have bought a candy bar, gum, etc., in the liquor store is not convincing.

In the cases cited by defendant the circumstances of the officers' questioning persons were entirely different from those in the case at bench. In none of them were circumstances such as occurred in this case with defendant's abrupt change of direction after leaving the liquor store and the surreptitious disposal of the paper bag.

## 2. *There was probable cause to arrest defendant.*

In view of defendant's suspicious actions, Officer Roseman was justified in investigating the contents of the paper bag which obviously defendant was trying to conceal from him, and to arrest him when an examination of the contents of the paper bag showed that defendant had violated Business and Professsions Code section 25662. (See *People* v. *Rosenfeld* (1971) 16 Cal.App.3d 619 [94 Cal.Rptr. 380].)

### 3. *The booking search.*

█ Defendant contends that the booking search was an unconstitutional violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.

█ Government Code section 26640 provides, in part: "The sheriff shall take charge of, safely keep, and keep a correct account of, all money and valuables found on each prisoner when delivered at the county jail." This section codifies the long-established right to search a prisoner when he is booked at the police station in order to prevent weapons and contraband from being brought into jail, and to remove his personal effects from him. It has been declared that a search of a person lawfully arrested in the process of booking him is a reasonable search (*People* v. *Rogers* (1966) 241 Cal.App.2d 384, 388-390 [50 Cal.Rptr. 559]; *People* v. *Reed* (1962) 202 Cal.App.2d 575, 579-580 [20 Cal.Rptr. 911]) and the only requirement is that the initial arrest must have been valid. █ In our case, since the initial arrest was based on probable cause, the arrest was legal. Thus, it would automatically follow that any contraband which is found on the defendant's person at the booking search was lawfully seized. This is the law as it now stands. █ "A search of an arrested person at the time of his booking has always been considered contemporaneous to his arrest and is a reasonable search. Government Code section 26640 provides in part: 'The sheriff shall take charge of, safely keep, and keep a correct account of, all money and valuables found on each prisoner when delivered at the county jail.' This section codifies the long-established right to search a prisoner when he is booked at the police station in order to prevent weapons and contraband from being brought into the jail, and to remove his personal effects from him. [Citation.]" (*People* v. *Munsey* (1971) 18 Cal.App.3d 440, 448 [95 Cal.Rptr. 811]; *People* v. *Reed, supra,* at p. 580; *People* v. *Long* (1957) 152 Cal.App.2d 716, 720 [313 P.2d 174].)

Defendant contends that the booking search which discovered the marijuana in defendant's coat pocket was an unlawful search and seizure because, for the crime of possession of alcohol by a minor, the officer should not have arrested defendant but should only have issued him a citation.

Defendant in attempting to show the invalidity of the search points to cases like *People* v. *Dukes* (1969) 1 Cal.App.3d 913 [82 Cal.Rptr. 218], which are not applicable here because they all deal with the strict requirements imposed upon police officers in detaining persons violating provisions of the Vehicle Code. █ Section 40302 requires that a person taken

into custody pursuant to that section must be transported directly to a magistrate or other designated official and must be immediately released on bail or written promise to appear and "cannot lawfully be subjected to the routine booking process *used in the case of a nontraffic misdemeanant;* nor can he be searched as an incident of that process, either in the field or at a police station." (*People* v. *Superior Court* (*Simon*) (1972) 7 Cal.3d 186, 209 [101 Cal.Rptr. 837, 496 P.2d 1205]; italics added.)

The same requirements, however, do not exist with respect to arrests which are made under the Penal Code (or, more particularly, the Business and Professions Code). Section 853.6, subdivision (a), of the Penal Code provides that when a person is arrested for a misdemeanor and does not demand to be taken before a magistrate, he may be released if the arresting officer or his superior determines that he should be released, after being given a written notice to appear in court. If the person is not released "prior to being booked," he may then be released if the booking officer or his superior so determines. Section 853.6, subdivision (i), provides that "If the arrested person is not released . . . prior to being booked by the arresting agency," the booking officer or his superior must make a certain investigation there outlined to determine whether he should be released. Likewise, section 24209 of the Business and Professions Code provides in part that the officer arresting a person for violation of the division in which section 25662 appears *may* release such person without taking him before a magistrate upon the person's signing an agreement to appear in court. Thus, where the defendant is arrested on a misdemeanor charge not covered by the Vehicle Code, it is possible that the arresting officer may decide, as did the officer in the instant case, not to release the defendant and instead may carry out a booking search pursuant to Government Code section 26640.

There is no requirement that a person arrested for a non-Vehicle Code misdemeanor violation must be released without bail nor without booking. It is a matter within the discretion of the arresting officer or the booking officer.

Section 853.6, subdivision (i), provides in relevant part, concerning the investigation which the booking officer must make before releasing the arrested person without bail, "Such investigation shall include, but need not be limited to, the person's name, address, length of residence at that address, length of residence within this state, marital and family status, employment, length of that employment, prior arrest record, and such other facts relating to the person's arrest which would bear on the question of his release pursuant to the provisions of this chapter." Although some of

this information would not apply to a 19-year-old juvenile, the information which would apply would take some time to obtain. The officer would not necssarily have to take the arrestee's statements at face value, but could take the necessary steps to verify them. All this would take time.

Applicable here is the language of Chief Justice Wright in his concurring opinion in *People* v. *Superior Court (Simon)*, *supra,* 7 Cal.3d 186, 214-215, where he was discussing the situation at the booking office while the defendant was unable to meet bail requirements within a relatively short period. The Chief Justice's comments could very well apply to the time required to confirm the information given by an arrestee, where bail is not going to be required. The Chief Justice said that where the defendant was unable to meet bail within a relatively short period, "police officers would have to detain him until bail money or a bond could be posted. Clearly in such a situation the police would be entitled to make a full search of defendant at that point in time prior to detaining him further. It would be an unreasonable burden to require law enforcement officers to segregate the person detained in some remote area of the custodial facilities removed from the jail population or assign an officer to watch over the arrestee until the required bail is posted which may be hours or days later. The safety of those detaining him, the safety of others, and *the prevention of the introduction of contraband into the custodial facility* require that such a person be subjected to a full search." (Italics added.) The danger of the introduction of contraband is well illustrated in the instant case.

In any event, defendant has cited no case holding that, under the circumstances here, there was anything unconstitutional in booking defendant and in searching him.

Let the writ issue as prayed for, directing respondent superior court to set aside the order suppressing evidence.

Devine, P. J., and Good, J.,* concurred.

A petition for a rehearing was denied February 28, 1973, and the petition of the real party in interest for a hearing by the Supreme Court was denied March 29, 1973. Mosk, J., was of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.