[Crim. No. 5949. Second Dist., Div. Three. Jan. 17, 1958.]

THE PEOPLE, Respondent, v. MARGARET JONNIE BARNETT et al., Defendants; DONALD C. FLANNES, Appellant.

John H. Marshall for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Margaret Jonnie Barnett and Donald C. Flannes were accused, in two counts, of violating section 11500 of the Health and Safety Code in that they unlawfully had in their possession heroin (Count I) and marihuana (Count II). In a nonjury trial they were adjudged guilty as charged. Flannes appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the court erred in overruling his objection to the offer in evidence of Exhibits 1 and 2, the heroin and marihuana, and erred in denying his motion to suppress that evidence. His argument is that the evidence was obtained by unlawful search and seizure.

Officer Nichols, a deputy sheriff assigned to the narcotics detail, testified that on October 9, 1956, about 11 a. m., he received information from a confidential informant that the

defendants were in possession of a large quantity of mari-huana and heroin and they were about to leave apartment 208 at 147 South Normandie Avenue, Los Angeles, the afternoon of that day; he (witness) had received information from that informer on two prior occasions regarding the sale of nar-cotics; those occasions were within a month preceding the arrest in the present case; after having received the informa-tion on the two prior occasions he (officer) participated in the investigation of those two cases and he observed an under-cover agent buy narcotics in those cases; he did not make arrests in those cases before the arrest was made in the present case; in the present case he received the impression from the informer that if the defendants believed they would be arrested they would destroy the evidence in the apartment by flushing it down the toilet or by throwing it out the window; he and three other officers went to the apartment house and talked with the manager and the manager's wife; they told the officers that the defendants had lived there about two days and during that time numerous persons, males and females, had been going to the apartment, staying five or ten minutes and leaving, and they used the front and rear doors of the apartment house, that other tenants had complained about it and the manager locked the rear door and was going to ask the defendants to move; the manager gave the officers a pass-key to apartment 208 and told them that in case the defend-ants would not let them into the apartment, they might use the passkey to gain entry, and that if the night chain on the apartment door was hooked they might force entry into the apartment; then the officers went to the door of apartment 208 and one of them inserted the passkey in the lock and opened the door but the chain was hooked; the officer forced the door, breaking the chain lock; when they entered the apartment the defendants were lying on the bed; the officers immediately told defendants that they were from the sheriff's office and that defendants were under arrest; defendant Flannes made a motion with his left hand toward his face, and one of the officers struggled with him, forced his left hand open, and took a rubber container (part of Exhibit 2) from his hand; opposite the bed the officers found a basket containing a bag in which there was a green leafy substance; in the closet by the bed they found a large shopping bag containing a considerable amount of green leafy substance; on the couch they found a partially burned cigarette contain-ing a green leafy substance; on the kitchen table they found

two spoons with blackened bottoms, two eyedroppers, and two boxes of empty gelatine capsules; he (witness) asked Flannes if the heroin in the rubber container (part of Exhibit 2) was all the heroin Flannes had in the house; Flannes said that is all; he (witness) observed 11 fresh puncture marks on Flannes' arm and 11 fresh puncture marks on Barnett's arm; they said they did not know how they got the marks on their arms; the officers did not have a search warrant or a warrant of arrest; they did not knock on the door or identify themselves as officers before they entered the room.

There were 2½ pounds of the green leafy substance which was taken from the apartment. A brown whitish powder was in the rubber container. A chemist testified that the leafy substance was marihuana and that the powder was heroin; and that crystals taken from the spoons contained heroin.

A peace officer, may without a warrant, arrest a person when a felony has been committed and the officer has reasonable cause for believing the person arrested to have committed it. (Pen. Code, § 836.) ▇ ''[R]easonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt.'' (*People* v. *Boyles*, 45 Cal.2d 652, 656 [290 P.2d 535].) ▇ ''Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused.'' (*Bompensiero* v. *Superior Court*, 44 Cal.2d 178, 183 [281 P.2d 250].) ▇ ''Whether the informant was reliable and whether the officer relied on the information received has first to be determined by the trial court so long as it acts with sound discretion.'' (*People* v. *Dean*, 151 Cal. App.2d 165, 167 [311 P.2d 85].) ''It is the officer's credibility and the soundness of his reasons for relying upon his informant that must impress the court before it can determine that the officer was authorized to make the arrest.'' (*Ibid.*) ▇ Officer Nichols had known the informer about a month prior to the arrest herein. Upon two prior occasions the officer had acted upon information furnished by the informer and had found the informant reliable, that is, the officer had investigated the two cases concerning which he had been informed and he observed two sales of narcotics. A part of the information received in the present case was that a large quantity of narcotics was in the apartment. In addition to the informer's statements, the officers had information from the manager and his wife that during the two days defendants

had been in the apartment many persons went to the apartment, using the front and rear doors of the apartment house, and stayed only a few minutes. The officers might reasonably have believed that the information furnished by the manager and his wife corroborated the information furnished by the informer that a large quantity of narcotics was in the apartment. The evidence was sufficient to support a finding of probable cause for the arrest.

 Appellant contends further to the effect that the failure of the officers to demand admittance or to explain the purpose for which they desired admittance, as required by section 844 of the Penal Code, rendered the entry and search unlawful. That section provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." In *People* v. *Maddox*, 46 Cal.2d 301 [294 P.2d 6], it was said at page 306: "Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844.

 Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose." It was also said therein at pages 306 and 307: "[W]hen there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains."

The heroin and marihuana were admissible in evidence.

The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., concurred.

Vallée, J., concurred in the judgment.