[Crim. No. 11332.   Second Dist., Div. Two.   Aug. 8, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JULIAN
GALLARDO, Defendant and Appellant.

Gershan & Castillo and Martin G. Castillo for Defendant
and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, As-
sistant Attorney General, and Raymond M. Momboisse, Deputy
Attorney General, for Plaintiff and Respondent.

ROTH, P. J.— ■ Appellant, having waived a jury, was found guilty by the court of possession of heroin for the purpose of sale in violation of Health and Safety Code, section 11500.5. He appeals from the judgment of conviction solely on the ground that the heroin found in his possession at the time of arrest was unlawfully seized and therefore inadmissible at trial. We do not agree.

The evidence in dispute, consisting of a number of various sized balloons of heroin, was obtained pursuant to a search warrant issued by a magistrate of the municipal court on the showing made in an affidavit therefor. Appellant contends that the affidavit does not justify a finding of probable cause, citing *Aguilar* v. *Texas,* 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723].

In *Aguilar,* it was held that the Fourth amendment requirement that ". . . no [search] Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . ." (U.S. Const., Amend. IV) applied to the states through the due process clause of the Fourteenth Amendment and that federal standards relating to the adequacy of a supporting affidavit are required (*Aguilar* v. *Texas, supra,* at p. 110). The affidavit in *Aguilar* was cursory and obviously inadequate. It recited that "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of law." (*Id.,* p. 109.) The Supreme Court pointed out that the magistrate could not have made any independent assessment from the quoted averments of probable cause for the search which he authorized. The magistrate, the court said, would necessarily have had to rely solely on the affiant's judgment and not his own. The court then said: "Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones* v. *United States,* 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was 'credible' or his information 'reliable.' " (*Aguilar* v. *Texas, supra,* at pp. 114-115.)

In the case at bench, the affidavit, which is set out in full in the margin,[1] alleged essentially as follows:

1. Affiant, a seasoned police officer, with 12 years' experience in the narcotics field, received information from an informant with a proven record of reliability that on afternoons between 4 and 5 p.m. appellant habitually went to the

[1] "Facts in support of issuance of search warrant:

"Your affiant now is and has been for the past 12 years assigned to the Los Angeles Police Department, Narcotics Division. During said time he has investigated narcotic offenses and has testified in the courts of Los Angeles County as an expert on the subject of narcotic law enforcement.

"The investigation of your affiant concerning the narcotic activities of the said Julian Gallardo in the opinion of your affiant gives your affiant reasonable and probable cause to believe, and he does believe, that the said Julian Gallardo sells heroin and that he for that purpose possesses heroin on his person and in the vehicle which he drives and parks near the place of sale.

"The opinion of your affiant is based upon his experience and upon his justifiable reliance on the statements of two informants whose identity affiant wishes to keep secret to preserve their identity and safety for further assistance to narcotic law enforcement.

"One confidential informant your affiant believes to be reliable because he has never given inaccurate information and law enforcement officers have relied upon his information three times; the information proved to be true; persons were arrested for narcotic offenses. In one of the cases 764 pounds of marijuana were recovered and federal cases are now pending against the persons arrested. On one case the person was arrested and the case is pending in court. On the third instance the person arrested is pending court proceedings due to parole violation. This informant on December 7, 1964 told your affiant that said Julian Gallardo on afternoons between 4:00 and 5:00 p.m. came to the Grand Central Market at Third and Broadway in Los Angeles; that he drives a car which he parks nearby and in which he keeps the heroin which he sells at the market area.

"The second confidential informant is reliable because on three different occasions he has given information concerning narcotic users and peddlers; the information has proved accurate in all respects in that in one case the person arrested has been held to answer, trial is pending in the Superior Court; two persons have been found guilty on the second occasion, and on the third occasion, although the information was accurate, [the] case was rejected for prosecution because the law of search and seizure was violated. Said informant told affiant that during the last two weeks said Julian Gallardo sold heroin in said market.

"During this last week your affiant talked with John Weatherby who is the parking lot attendant at 217 South Main Street. He states that a person answering the description of the said Julian Gallardo on afternoons between 4:00 and 5:00 p.m., approximately, parks a 1949 Cadillac—dark in color—on that lot, and walks toward that area of the said market. This parking lot is about two blocks from the market.

"The records of LAPD show that said Julian Gallardo has been arrested and convicted five times for narcotic offenses. The last conviction being on May 14, 1962 when he was sentenced to State Prison."

The affidavit concludes with a prayer that the warrant be issued for both day and night purposes.

Grand Central Market at Third and Broadway in Los Angeles; that he drove a car which he parked nearby in which he kept heroin which he sold in the market area.

2. A second informer, also of proved reliability, told the affiant that during the last two weeks, appellant has been selling heroin at the said market.

3. Affiant's independent investigations show that appellant had been previously convicted for narcotics offenses.

4. John Weatherby, a parking lot attendant, at a lot approximately two blocks from the market, who was independently interviewed by affiant, told affiant that a man answering appellant's description parked his car in the lot on afternoons, approximately between 4 and 5 p.m. and that thereafter he walked in the direction of the market.

Appellant concedes the reliability of the informers. He also admits that the affiant police officer was not required to disclose the names of the informers. (*Aguilar* v. *Texas, supra,* at p. 114; *People* v. *Govea,* 235 Cal.App.2d 285, 298 [45 Cal.Rptr. 253].) He argues, however, that the affidavit failed to supply the issuing magistrate sufficient facts upon which to make an independent determination of the existence of probable cause.

In *People* v. *West,* 237 Cal.App.2d 801 [47 Cal.Rptr. 341], this court determined that an affidavit which recited that a reliable informant told the affiant that the defendant possessed marijuana in a certain apartment where he lived with a girl named Lou Ann, did not comply with the requirements of the *Aguilar* case. *West* points out that the source of the informant's knowledge was not stated in the affidavit nor was the information of such specific detail that personal knowledge could be implied. It was noted, however, that: "It is, of course, possible for an informant's bare conclusion to be buttressed by secondary information, which itself does not amount to probable cause but which fortifies the first, and for the two in combination to provide sufficient cause for the issue of a search warrant." (*People* v. *West, supra,* at p. 807.) In *West,* the corroboration consisted of the facts that the apartment was registered to someone named Lou Ann, and that the defendant had a prior narcotics record. The first fact did not imply criminal conduct, and the second could not be used for that purpose.

At bench, there is more than the bald conclusion of the informant that appellant was going to the Grand Central Market daily in the afternoon and was selling heroin at that location. The affiant police officer had personally verified that

appellant, or at least a man answering that description, drove a car to a lot nearby, as the informant had stated. He further verified that appellant came daily in the afternoon at approximately 4 to 5 p.m. and after parking his car, headed in the direction of the market. This personal verification corroborates the information received.

In *Draper* v. *United States*, 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327], a federal narcotics agent named Marsh had been informed by a reliable informant named Hereford that the defendant, Draper, would arrive at a certain time on a certain train from Chicago, would be carrying a tan zipper bag, and would be dressed in a certain manner. Hereford also stated that three ounces of heroin would be on Draper's person or in his bag. Marsh, of course, was waiting for the defendant when he alighted from the train. All the details of Draper's dress and appearance fit the information given by Hereford, and on arrest a search was made. The heroin was found on his person. The court upheld the reasonableness of the arrest and search, noting at page 313: "... [S]urely, with every other bit of Hereford's information being thus personally verified, Marsh had 'reasonable grounds' to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true.

" 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar* v. *United States, supra* (338 U.S. 160 at 175 [69 S.Ct. 1302, 93 L.Ed. 1879])."

In the case at bench, an admittedly reliable informant gave certain information about the conduct of appellant, including the possession of heroin. This information was personally corroborated except for the possession. As in *Draper,* the inference could be reasonably made that affiant, if he made a search, would find heroin.

" [W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be

accorded to warrants." (*United States* v. *Ventresca,* 380 U.S. 102, 109 [85 S.Ct. 741, 13 L.Ed.2d 684].)

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

A petition for a rehearing was denied August 18, 1966.