[Crim. No. 14458.   Second Dist., Div. Five.   Apr. 22, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT H. TOULSON, Defendant and Appellant.

Henry V. Cleary for Defendant and Appellant.

A. L. Wirin, Fred Okrand, Laurence R. Sperber, Boyd S. Lemon and Jane R. Brady as Amici Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, Acting P. J.—Defendant Robert H. Toulson was convicted of illegal possession of marijuana. (Health & Saf. Code, § 11530) by a court sitting without a jury. He appeals from the order granting him probation. (Pen. Code, § 1237.)

### Facts[1]

On December 26, 1966, two uniformed and armed Los

---

[1]Facts most favorable to the prosecution are necessarily set forth. (*People* v. *Green,* 13 Cal.2d 37, 42 [87 P.2d 821].) There is a conflict in

Angeles City police officers, Jobe and Jenkins, were on duty, and at about 5:30 p.m., went to a hotel at 258 West Eighth Street in San Pedro. Officer Jobe had previously received information from a confidential informant that defendant had narcotics in his possession.[2] Defendant was known to be living at the hotel, in room 213. At the time he first saw the officers, defendant was in the hallway outside his room, some 60 feet away. He saw them walking up the stairs to the second floor. Defendant was then talking to the landlady at the hotel desk at the front of the hotel and on the second floor, some 15 feet from the stairs. When the officers arrived on the second floor, they observed defendant in the hallway, walking from the front of the hotel and from the area of the stairs leading from the first floor, toward his room. He was some 25 or 30 feet from the room. The door of room 213 was open and the officers were at the door, but had not entered. Persons other than defendant were observed by Officer Jobe in the hotel, and Jobe had walked past some of them in getting to room 213. As defendant approached, Jobe asked him if he was Robert Toulson, and he said he was. Defendant, in response to a question, stated that room 213 was his room. This conversation was had while all three persons, Jobe, Jenkins, and defendant, were in the hallway. Jobe asked defendant ". . . if we [the officers] may come inside and talk to him." Defendant said, "Yes." All three entered the room. No statement of reason for the requested conversation had been made by Jobe before they entered the room. After the three men were inside the room, Jobe told defendant that he had information that defendant had narcotics, that he was selling narcotics, and that he might have some in his room. Defendant said this was not true. Jobe asked if he might search the room. Defendant said, "Yes, I want to tell you that I have some Darvon capsules in the room here, but I have a prescription for them." Jobe said, ". . . if this was all the narcotics he had, that [he, Jobe] was not concerned with the Darvon capsules." Defendant then said, "Well, go ahead and search," or "Then you may go ahead and search."

the evidence as to whether the officers entered the room of defendant before he spoke to them or not. We adopt, as did the trial court, the version that they entered after requesting permission to do so.

[2]Though the officer laid such foundation as to justify the conclusion that the information was reliable, cross-examination as to that issue was not permitted by the judge presiding at the preliminary hearing. Since no error is claimed due to this curtailment of inquiry, we accept the officer's statement that such informant was reliable.

As Jobe then walked toward the dresser, defendant "reached over on top of the dresser and grabbed this sandwich bag which was rolled up. He grabbed it in his right hand and put it down by his side." Defendant was asked what he had there, and he replied, ". . . something someone had left in the room." Jobe said, "Let me see it," and defendant handed it to him. Defendant was placed under arrest after he had handed the bag and its contents to Jobe. The wax sandwich bag was opened by Jobe and was seen to contain three hand-rolled cigarettes. Expert testimony established that the cigarettes contained marijuana. Zig-Zag cigarette papers were found in the pocket of defendant's trousers and in his dresser drawer.

Defendant raises three contentions on this appeal: (1) the evidence failed to show knowledge by defendant of the narcotic nature of that which he possessed; (2) the commitment of defendant was illegal; (3) defendant should have been apprised of his constitutional rights concerning search and seizure before his consent to search could be deemed voluntary and effective.

An amici curiae brief was also filed making the contention in behalf of defendant that "[t]he search of appellant's room and the seizure of the marijuana were illegal and the judgment should be reversed because the United States and California Constitutions require that prior to any search without a warrant the officer must warn the suspect of his constitutional right to refuse permission for the search."

In answer to the first contention, it is well established that to justify a conviction of unlawful possession of marijuana, the prosecution must prove actual or constructive possession by defendant and knowledge of its presence and narcotic character. (*People* v. *Powell*, 236 Cal.App.2d 881 [46 Cal.Rptr. 415]; *People* v. *Birch*, 190 Cal.App.2d 647 [12 Cal. Rptr. 122]; *People* v. *Amos*, 190 Cal.App.2d 384 [11 Cal.Rptr. 834].) However, these essential facts may be proved by circumstantial evidence and reasonable inferences which may be drawn from such evidence. (*People* v. *Prescott*, 257 Cal.App. 2d 843 [65 Cal.Rptr. 366]; *People* v. *Schumacher*, 256 Cal. App.2d 858 [64 Cal.Rptr. 494]; *People* v. *Rosales*, 226 Cal. App.2d 588 [38 Cal.Rptr. 329].) Defendant's conduct may be sufficient to show his knowing possession of a narcotic. (*People* v. *Villanueva*, 220 Cal.App.2d 443 [33 Cal.Rptr. 811]; *People* v. *Baltazar*, 159 Cal.App.2d 595 [323 P.2d 1062].) Defendant's statement of his occupancy of

the hotel room coupled with his conduct of grabbing the wax sandwich bag containing marijuana and attempting to conceal the bag from the officers are sufficient to show defendant's knowledgeable possession of contraband. (*People* v. *Rightnour*, 243 Cal.App.2d 663 [52 Cal.Rptr. 654]; *People* v. *Trujillo*, 183 Cal.App.2d 388 [6 Cal.Rptr. 535].)

Defendant's next contention, that his commitment was illegal, is without merit. The correlative issue raised by defendant and amici curiae of whether defendant must be apprised of his constitutional rights concerning search and seizure before consent to search is sought is not applicable, because under the facts there was no true search dependent on consent. Hence, it is not considered. (See *People* v. *Henry*, 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557].) Based on information received from a reliable informant, the officers went to defendant's hotel room. The door was open. Defendant was 25 to 30 feet away, down the hallway. He walked *away* from the stairs leading to the floor below. He was under no conceivable compulsion to confront the officers. Defendant, by his own choice, approached the officers, admitted his identity, admitted that he was the occupant of the room, and consented to the officers' entry. To hold that such action is not free and voluntary would effectively hold that officers in uniform could not interview without formalized legal warnings when persons approach them ■ Whether consent to enter was given voluntarily or in acquiescence to implied assertion of authority is ordinarily a factual determination to be made by the trial court. (*People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852]: "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances." See also *Castaneda* v. *Superior Court*, 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641]; *People* v. *Bustamonte*, 270 Cal.App.2d 648, 652 [76 Cal.Rptr. 17]; *People* v. *Linke*, 265 Cal.App.2d 297, 311-312 [71 Cal.Rptr. 371].)

We cannot conceive, under the circumstances here existent, any reasonable question as to the lawfulness of the officers' entry, or that permission to do so was not voluntarily given. (*People* v. *Ortiz*, 210 Cal.App.2d 489, 498 [26 Cal.Rptr. 677]; *People* v. *Cunningham*, 188 Cal.App.2d 606, 609 [10 Cal.Rptr. 604]; *People* v. *Howard*, 166 Cal.App.2d 638, 651 [334 P.2d 105].) We concur in the trial court's conclusion. ■ In any event, "Where substantial evidence

supports a preliminary finding by the trial court and the implied ultimate finding . . . that a voluntary consent has been given, a reviewing court must accept consent freely given as a fact proven." (*People* v. *Bilderbach,* 62 Cal.2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921]; *People* v. *Linke, supra,* 265 Cal.App.2d 297 at p. 311; *People* v. *Roberts,* 246 Cal.App. 2d 715, 727 [55 Cal.Rptr. 62]; *People* v. *Jackson,* 191 Cal. App.2d 296, 300 [12 Cal.Rptr. 748].)

Following defendant's statement, "Well, go ahead and search," and as the officer approached a dresser, defendant grabbed the wax sandwich bag and held it down by his side. This conduct provided the officers with adequate probable cause to arrest defendant, in light of the reliable informant's assertions of narcotics activity. The totality of the record justifies the conclusion (obviously reached by the trial court) that the officer, with 19 years of police experience, and in the process of investigating a narcotics complaint, had reason to suspect that defendant was then in possession of narcotics.[3] Defendant's attempt to surreptitiously conceal the wax bag constitituted furtive conduct, which is reasonably taken into consideration. (*People* v. *Reyes,* 206 Cal.App.2d 337 [23 Cal.Rptr. 705]; *People* v. *Wiley,* 162 Cal.App.2d 836 [328 P.2d 823]; *People* v. *Barnett,* 156 Cal.App.2d 803 [320 P.2d 128].) The officers' preliminary request to see the sandwich bag, readily acceded to by defendant prior to his arrest, does not vitiate the legality of his arrest. (*People* v. *Pettyjohn,* 172 Cal.App.2d 188 [342 P.2d 416].) The wax bag was in plain and open view, and it is well established that officers need not blind themselves to that which is clearly observable. (*People* v. *Marshall,* 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Roberts,* 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Superior Court,* 261 Cal.App.2d 687, 689 [68 Cal.Rptr. 281].) This was not a search. (*People* v. *Bouchard,* 161 Cal.App.2d 302, 305 [326 P.2d 646]; *People* v. *West,* 144 Cal.App.2d 214, 219 [300 P.2d 729].) Probable cause to arrest defendant existed prior to the officer's examination of the contents of the wax bag. The discovery and seizure of the marijuana violated no rights of defendant. (*People* v. *Davis,* 235 Cal.App.2d 214, 222 [45 Cal.Rptr. 297].) As was said in *People* v. *Michael, supra,* 45 Cal.2d 751, 754: ". . . to hold as a matter of law that the evidence was produced in response to an unlawful assertion of authority

---

[3] The question of the officer's conclusion at the time of the ineffectual concealment of the narcotic was not asked.

would seriously hamper officers in the reasonable performance of their duties. Thus, it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. Such inquiries, although courteously made and not accompanied with any assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority.''

The judgment is affirmed.

Reppy, J., concurred.

AISO, J.—I respectfully dissent. The People seek to justify an entry, a search, a seizure, and an arrest—all without a search or arrest warrant—and the ensuing conviction upon the theory that defendant consented to the entry, search, and seizure and thereby waived his Fourth Amendment rights. The record, in my opinion, fails to reflect the type of inquiry, required by minimal due process, as to whether defendant's apparent consent was in fact and in law freely and intelligently given. Nor does the record show that the People have sustained their burden in proving a justification for proceeding without a warrant in this case. The majority opinion, furthermore, sets forth no reason why in arriving at the disposition it reaches, it need not consider whether a defendant must be first advised of his rights under the Fourth Amendment, in the manner now required under the Fifth (right against self-incrimination) and the Sixth (right to counsel) Amendments, before an effective consent may be found.[1]

## I.

Since we deal with a federal constitutional question (*Mapp v. Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684,

[1]That defendant's consent was not in fact free and voluntary was raised at the preliminary hearing. This objection was preserved in his stipulation to the use of the transcript of the preliminary hearing at trial. He also renewed this objection on his motion to set aside the information (Pen. Code, § 995) with the further elaboration that there can be no valid consent without one being apprised of his rights under the Fourth Amendment. Upon denial of his motion, defendant applied for a writ of prohibition (Pen. Code, § 999a). The appellate court dismissed his petition because of procedural error without reaching the merits. He renewed his objections at trial, citing *United States* v. *Blalock* (E.D.Pa. 1966) 255 F.Supp. 268.

84 A.L.R.2d 933]), which necessitates a review of a constitutional fact upon the entire record (see, e.g., *Jacobellis* v. *Ohio* (1964) 378 U.S. 184, 187-190 [12 L.Ed.2d 793, 797-799, 84 S.Ct. 1676]; *Zeitlin* v. *Arnebergh* (1963) 59 Cal.2d 901, 909-910 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707]) for reasons which will be discussed more fully later, a summary of the evidence is set forth rather than facts interpreted in favor of the People.

The evidence consisted only of the transcript of the preliminary examination, the exhibits received at that hearing, and defendant's brief testimony at trial controverting only that part of the officer's testimony that defendant had reached the door way of his room when the officers entered. He testified that he was still 60 feet away. He also testified that the officers were in uniform and armed.

Officer Jobe was the People's sole witness, who testified at the preliminary hearing but not at the trial. His testimony was as follows: He was a "Police Officer for the City of Los Angeles, assigned to Harbor Division," on December 26, 1966. Upon receiving information from a confidential informant[2] that "defendant had in his possession narcotics," he went to defendant's room, No. 213, in a hotel located at 528 West 8th Street,[3] in the County of Los Angeles, about 5:30 p.m. on December 26, 1966. He was in uniform.

Jobe and his partner officer, Jenkins, walked up the stairway to the second floor. He observed defendant in the hallway about 25 or 30 feet away, walking from the front of the hotel towards his room. He and his partner were standing at the doorway of defendant's room, which was open, when he first observed defendant. Neither he nor his partner entered defendant's room before defendant had reached it.

Upon seeing defendant, Jobe asked, "if he was Robert Toulson and he said that he was." Jobe asked him if the room was his. By then "we were at the doorway to room 213 and the doorway was open." Defendant replied that it was. Jobe asked defendant "if we [Jobe and partner officer] may come inside and talk to him" or "if we might step into his

---

[2]He had used the informant on two prior occasions. One resulted in "a prosecution" and the other case was pending. Defense counsel inquired: "Did this reliable informant provide information about Donald Gross [another occupant of the hotel]?" The magistrate sustained an objection to the question: "This isn't a search situation, I don't think that the reliability of the informant has anything to do with it. I am going to sustain the objection."

[3]Presumably in San Pedro from the fact that he was assigned to the Harbor Division.

room and he said, 'Yes, you may'" or "Yes." There were other people in the hallway but not close enough to hear their conversation.

On cross-examination, he was asked, "Q. You did not then advise him why you wanted to talk to him?" His answer was: "*Not until I got inside.*" (Italics added.) Asked, "Did you tell the defendant why you wanted to enter his room?" he replied, "*Not before I entered, no.*" (Italics added.) "We stepped inside the room and I informed him that I had received information that he had narcotics in his possession, also that my information was that there was narcotics in the room. I asked him if this was true and he said no." On cross-examination he was asked, "After you were inside, what was it that you said to him?" Jobe replied, "I told him that I had information that he had narcotics, that he was selling narcotics and that he might have some in his room. I asked him if this was true. . . . He said that it wasn't."

Then Jobe said, "Would you mind if we looked over your room? [ ¶ ] He said, '*Well, no,* I don't mind, but first of all I would like to tell you that I have some pills here which are Darvon and these I have from a prescription.' [ ¶ ] *I told him that I wasn't concerned with the Darvon pills* and he said, 'Then you may go ahead and search.' " (Italics added.) On cross-examination his testimony was: "Then I asked him if I might search the room. . . . He said, 'Yes,' but first he said, 'I want to tell you that I have some Darvon capsules in the room here, but that I have a prescription for them.' . . . After he told me that he had these capsules, I told him that if this was all the narcotics that he had, that I was not concerned with the Darvon capsules. . . . Then he says, '*Well,* go ahead and search.' " (Italics added.)

On direct examination by the prosecutor, Jobe testified as to the next incident as follows:

Q. Did anything happen *before you started to search the room?* [Italics added.] A. Yes. Q. Would you tell us what that was? A. The defendant reached on top of the dresser and grabbed a wax bag which was laying [*sic*] on top of the dresser. I asked him, I said, 'What is that there?' He said, 'It must have been something somebody left in the room.' So I says, 'Let's see it,' and he handed it to me. I opened the wax bag and there were three hand-rolled cigarettes inside the wax bag. Q. Was this before or after you asked his permission to search his room? A. This was after."

On cross-examination the testimony in this particular was:

"A. Then he says, 'Well, go ahead and search.' Q. And then what happened? A. Then as I walked toward the dresser he reached over on top of the dresser and grabbed this sandwich bag which was rolled up. . . . Q. What then did you do? A. I asked him what he had there. Q. To which he responded what? A. He said something someone had left in the room. Q. Then what happened? A. I said, 'Let me see it,' and he handed it to me."

The officer also found a package of Zig-Zag cigarette papers in defendant's right front trouser pocket, and another package in the top drawer of the dresser.

The following testimony, objection, and ruling of the magistrate on cross-examination is also recorded: "Q. [By Defense Counsel] In addition to the wax-paper bag, did you discover anything else of a narcotic nature? A. Yes, I did. Q. What? A. In a traveling case which was in the little washroom and closet area there, there were several marijuana seeds in the bottom of this traveling bag. Q. How long have you been on the narcotic cases, Officer? A. I have been a Policeman for nineteen and a half years. I would say about, perhaps, nineteen years. Q. Have you any degree in Chemistry or Horticulture? A. No, I do not. [Defense Counsel]: I move that the witness' testimony on marijuana seeds be stricken as being a conclusion and being uncalled for. THE COURT: It may go out."

Jobe arrested[4] defendant "after [he] received the wax-paper bag from the defendant." He did not have either a search or arrest warrant. Defendant did not ask whether he had a search warrant. Defendant was "transported . . . to Harbor Station where he was arrested" and the evidence (sandwich bag and contents and cigarette papers) "were booked as evidence."

In addition to Officer Jobe's testimony, it was stipulated

[4]There is no presumption that an arrest without a warrant is lawful. (Evid. Code, § 664.) Noticeably absent from the record is the significance of the three hand-rolled cigarettes to the arresting officer. "The significance to the deputy of what he observed, the factors he considered in forming his belief, and his state of mind relative thereto and his opinion formed thereon are all elements relevant and necessary to the issue of probable cause." (*People* v. *Duarte* (1967) 254 Cal.App.2d 25, 30 [61 Cal.Rptr. 690], cert. denied, 390 U.S. 971 [19 L.Ed.2d 1181, 88 S.Ct. 1091].) Insufficiency of the evidence in this regard was not raised either at the preliminary hearing or at the trial. Hence, this defect cannot be raised on appeal. (See Witkin, Cal. Evidence (2d ed. 1966) pp. 61-62 and 63-64, and cases cited.) It serves as an indicium, however, of the lack of due care of the prosecutors and judges below for the interests of either the People or the defendant..

that a qualified forensic chemist be deemed to have been called and have testified that in his opinion the three hand-rolled cigarettes contained marijuana.

## II.

The threshold and pivotal question is whether defendant freely and intelligently consented to the officers' entering his room. Unless the entry be established by the People as having been lawful, then subsequent actions of the police remain unjustified. If the entry was illegal, then what transpired in quick succession thereafter bears the taint of that illegality. (*People* v. *Johnson* (1968) 68 Cal.2d 629, 632 [68 Cal.Rptr. 441, 440 P.2d 921]; *People* v. *Haven* (1963) 59 Cal.2d 713, 718 [31 Cal.Rptr. 47, 381 P.2d 927]; cf. *People* v. *Kanos* (1969) 70 Cal.2d 381 [74 Cal.Rptr. 902, 450 P.2d 278].)

Upon the basis of persuasive judicial precedents and of well established rules of law in the area of searches and seizures, it is my opinion that the record fails to establish a valid consent to the officers' entry into defendant's room.

Where an entry, a search and seizure, or an arrest is effected sans warrant, the burden is on the People to show a proper justification. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23]; *People* v. *Henry* (1967) 65 Cal.2d 842, 845 [56 Cal.Rptr. 485, 423 P.2d 557]; *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113].) The rule applies where the claimed justification is consent. (*People* v. *Johnson* (1968) *supra,* 68 Cal.2d 629, 632; *People* v. *Carter* (1957) 48 Cal.2d 737, 746 [312 P.2d 665].) The *quantum* of proof required at the preliminary hearing is "substantial evidence" (*Castaneda* v. *Superior Court* (1963) 59 Cal.2d 439, 444 [30 Cal.Rptr. 1, 380 P.2d 641]) and at the trial a "preponderance of evidence." "The phrase 'preponderance of evidence' is usually defined in terms of probability of truth; e.g., 'such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein.' [Citations.]" (Witkin, Cal. Evidence (2d ed. 1966) *supra,* p. 189.) Cases dealing with probable cause speak in terms of dealing with "probabilities." (E.g., *Draper* v. *United States* (1959) 358 U.S. 307, 313 [3 L.Ed.2d 327, 332, 79 S.Ct. 329]; *People* v. *Hillery* (1967) 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208], cert. denied, 386 U.S. 938 [17 L.Ed.2d 810, 87 S.Ct. 958]; *People* v. *Murrietta* (1967) 251 Cal.App.2d 1002, 1005 [60 Cal.Rptr. 56].) Application of the preponderance rule to a consent issue has

been approved. (*People* v. *Neal* (1960) 181 Cal.App.2d 304, 307-308 [5 Cal.Rptr. 241]; but cf. *People* v. *Roberts* (1966) 246 Cal.App.2d 715, 727 [55 Cal.Rptr. 62] ["truly substantial" evidence rule applied].) " 'There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony.' " (*Oliver* v. *Bowens* (9th Cir. 1967) 386 F.2d 688, 690.) Due consideration should also be given to the statement of Chief Justice Warren in *Miranda* v. *Arizona* (1966) 384 U.S. 436, 475 [16 L.Ed.2d 694, 724, 86 S.Ct. 1602, 10 A.L.R.3d 974]: "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. [Citation.] This Court has always set high standards of proof for the waiver of constitutional rights. . . ."

"To protect his right to object to an unreasonable search or seizure a defendant need not forcibly resist an officer's assertion of authority to enter his home or search it or his person. . . . , but if he freely consents to an entry or search . . . his constitutional rights are not violated and any search or taking of evidence . . . is not unreasonable. . . ." (*People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852].)

It is also well established that words importing an apparent consent do not constitute a valid consent in fact or in law under some circumstances. This is due to a failure to comprehend or to consider the significance of the meaning of consent, especially in the context of searches and seizures.

"Where consent is claimed, it must be a free and voluntary consent, not induced by fraud, threats, force or duress; the person consenting must have been legally and mentally capable of consenting and *must have had knowledge of the true nature of that to which he consented.* Mere assent or lack of objection without appreciation of the facts is not consent. . . ." (Italics added.) (Fricke-Alarcon, Cal. Criminal Evidence (7th ed. 1966) p. 457.)

Indeed, a consent is no less than a waiver of one's constitutional right under the Fourth Amendment.[5] And " 'courts

---

[5]The Fourth Amendment enjoins: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." "The sanctity of a private home is not only guaranteed by the Constitutions of the United States and of our own state, but it is traditional in our Anglo-Saxon heritage. 'A man's home is his castle' is, and should be, more than an

indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right . . . must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."[6] (*Johnson* v. *Zerbst* (1938) 304 U.S. 458, 464 [82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 146 A.L.R. 357].) This criterion was applied to a Fourth Amendment case in *Oliver* v. *Bowens* (9th Cir. 1967) *supra,* 386 F.2d 688, 690-691.

Quoting from *People* v. *Michael* (1955) *supra,* 45 Cal.2d 751, 753, Justice Sullivan (now of our Supreme Court) stated in *People* v. *Arketa* (1962) 207 Cal.App.2d 194, 198 [24 Cal. Rptr. 257], cert. denied, 372 U.S. 931 [9 L.Ed.2d 735, 83 S.Ct. 878] : " 'Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.' . . . On such question it is the province of the trial judge to pass upon the credibility of the witnesses and weigh their testimony [citation] and 'determine the fact as to whether or not consent was given.' [Citation.] "

It does not follow, however, as the majority in this case and other courts sometimes state that " '[w]here substantial evidence supports a preliminary finding by the trial court and the implied ultimate finding . . . that a voluntary consent has been given, a reviewing court must accept consent freely given as a fact proven. [Citations.]' " (*People* v. *Linke* (1968) 265 Cal.App.2d 297, 311 [71 Cal.Rptr. 371].) (*People* v. *Currier* (1965) 232 Cal.App.2d 103, 108 [42 Cal.Rptr.

empty phrase." (*People* v. *Privett* (1961) 55 Cal.2d 698, 703 [12 Cal. Rptr. 874, 361 P.2d 640].) A hotel room is treated as a home within the protection of the Fourth Amendment. (*Stoner* v. *California* (1964) 376 U.S. 483, 486-487 [11 L.Ed.2d 856, 858-859, 84 S.Ct. 889]; *People* v. *Reeves* (1964) 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393].) In *People* v. *Gastelo* (1967) 67 Cal.2d 586, 588, 589 [63 Cal.Rptr. 10, 432 P.2d 706], Chief Justice Traynor stated: "Under the Fourth Amendment, a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. . . . Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason *to enter in the manner chosen.*" (Italics added.)

[6]See also, Note, *Consent Searches: A Reappraisal After Miranda* v. *Arizona* (1967) 67 Colum.L.Rev. 130.

562]; cf. *Oliver* v. *Bowens* (9th Cir. 1967) *supra,* 386 F.2d 688, 690.)

Insofar as the determination of historical facts is concerned the statement is true. For example, the implied finding in this case that defendant was not 60 feet away from the door of his room when the officers entered is not subject to review.

But whether the apparent consent to enter the room was voluntarily and intelligently given is a "constitutional fact," a mixed question of fact and of law. Where a constitutional fact is the disputed issue, the reviewing court not only may but must make its independent finding upon the basis of the entire record. (E.g., *Foster* v. *California* (1969) 394 U.S. 440 [22 L.Ed.2d 402, 89 S.Ct. 1127] [fairness of lineup]; *Jacobellis* v. *Ohio* (1964) *supra,* 378 U.S. 184, 187-190 [12 L.Ed.2d 793, 797-799, 84 S.Ct. 1676] [obscenity]; *Zeitlin* v. *Arnebergh* (1963) *supra,* 59 Cal.2d 901, 909-910 [obscenity]; cf. *People* v. *Gray* (1967) 254 Cal.App.2d 256, 267 [63 Cal.Rptr. 211] [discriminatory enforcement of law]; and see: *Culombe* v. *Connecticut* (1961) 367 U.S. 568, 603-606 [6 L.Ed.2d 1037, 1058-1059, 81 S.Ct. 1860] [distinction between historical and constitutional facts explicated by Justice Frankfurter]; Note, *Supreme Court Review of State Findings of Fact in Fourteenth Amendment Cases* (1962) 14 Stan.L. Rev. 328.) Just as a trial court's finding that a confession was freely and voluntarily made is not binding upon an appellate court (*People* v. *Sanchez* (1969) 70 Cal.2d 562, 571 [75 Cal.Rptr. 642, 451 P.2d 74], so a finding that a consent was freely and voluntarily given should be open to an independent review by an appellate court upon the entire record, including the evidence in the case. At least, it is not binding upon a federal court on collateral review. (*Oliver* v. *Bowens* (9th Cir. 1967) *supra,* 386 F.2d 688, 690.)

Some courts have stated that the issue on appellate review is not a question of credibility of witnesses, but rather whether the police officer's testimony "taken at full value, warrants a finding that [defendant] freely and intelligently gave his unequivocal and specific consent to the search" (*Channel* v. *United States* (9th Cir. 1960) 285 F.2d 217, 220). (Accord *Judd* v. *United States* (D.C.Cir. 1951) 190 F.2d 649, 652.)

In a case in which the facts were "on all fours" with the instant case, the court in *Higgins* v. *United States* (D.C.Cir. 1954) 209 F.2d 819, 820, held the apparent consent invalid. The facts as stated at pp. 819-820 are: "[A] police sergeant testified: '. . . I identified myself to [defendant] as a police

officer and asked him if I could talk to him in his room. . . . He stated that that was all right and asked me to accompany him to his room. . . . I told him then about the information that I had, that I had received from the various sources, and he denied this information, denied that he was engaged in any narcotic drug traffic. I asked him then if I could look around. He stated that I could, was perfectly welcome to look anywhere in his room that I wanted to.' Another policeman gave similar testimony.''

In *Johnson* v. *United States* (1948) 333 U.S. 10 [92 L.Ed. 436, 68 S.Ct. 367], a Seattle detective lieutenant and four veteran federal narcotic agents went to a hotel upon the basis of information received from a confidential informant that unknown persons were smoking opium at the hotel. On their arrival, they recognized a distinctive and unmistakable odor of burning opium coming from Room 1. They did not know who occupied that room. ''They knocked and a voice inside asked who was there. 'Lieutenant Belland,' was the reply. There was a slight delay, some 'shuffling or noise' in the room and then the defendant opened the door. The officer said, 'I want to talk to you a little bit.' She then, as he describes it, 'stepped back acquiescently and admitted us.' He said, 'I want to talk to you about this opium smell in the room here.' She denied that there was such a smell. Then he said, 'I want you to consider yourself under arrest because we are going to search the room.' The search turned up incriminating opium and smoking apparatus, the latter being warm, apparently from recent use.''

The court held: ''Entry to defendant's living quarters, *which was the beginning of the search,* was demanded under color of office. It was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right.'' (333 U.S. at p. 13 [92 L.Ed. at p. 440].) (Italics added.)

A result similar to those reached in *Higgins* and *Johnson* should also be reached in this case by the application of recognized principles of law.

Even if the officers had reasonable and probable cause to believe that defendant had narcotics in his room, an entry or a search of his room without a warrant could be justified only as an incident to a lawful arrest or pursuant to a valid consent. (*People* v. *Henry* (1967) *supra,* 65 Cal.2d 842, 845.)

In *People* v. *Shelton* (1964) 60 Cal.2d 740, 746 [36 Cal. Rptr. 433, 388 P.2d 665], our Supreme Court speaking

through Chief Justice Traynor stated: "The right to seek interviews with suspects at their homes [citations] does not include the right to demand that a suspect open his door. A suspect has no duty to cooperate with officers in securing evidence against him, and in the absence of probable cause to make an arrest, he is entitled to have a magistrate determine whether there is justification for invading the privacy of his home."

In *People* v. *Haven* (1963) *supra,* 59 Cal.2d 713, 717, the court held it improper for an officer to gain entry by pushing further open a door already open about 2 inches and entering before the defendant or his wife could object. The court stated, "The right to seek interviews with suspects or witnesses at their homes does not include the right to walk in uninvited merely because there is no response to a knock or a ring." The police may not induce the opening of a door by ruse or subterfuge (*People* v. *Reeves* (1964) *supra,* 61 Cal.2d 268, 273) or by wrongful assertion of authority (*People* v. *Edgar* (1963) 60 Cal.2d 171, 174 [32 Cal.Rptr. 41, 383 P.2d 449]).

The United States Supreme Court recently has stated in *Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548 [20 L.Ed.2d 797, 802, 88 S.Ct. 1788]: "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."

In *Schoepflin* v. *United States* (9th Cir. 1968) 391 F.2d 390, 398-399 the court held a purported consent to entry and search of one's apartment could not be upheld in the absence of a trial court finding that the words of apparent consent in the circumstances in which they were used "reflected (1) an understanding, (2) uncoerced, and (3) unequivocal election to grant the officers a license which (4) [defendant] knew may be freely and effectively withheld." The court held that no such showing had been made under the following circumstances: A robbery suspect was in bed reading a paper. Three officers went to his front door and three to the back. "An officer rang the front door bell. [Defendant] appeared at the door in his bathrobe. The officer in charge identified himself and asked if they could come in and talk to him. [Defendant] replied: " 'Yes, come ahead.' The three officers who had gone to the front door then entered the apartment." Once entry

was gained, the officer in charge explained that they were investigating a bank robbery and a stolen gun. Defendant denied involvement. ''After four or five minutes of questioning, the officer in charge asked 'if we may search the apartment or the house. . . .' [Defendant] replied, 'Go ahead, I have nothing to hide.' '' A search revealed stolen money, a nylon stocking, and other articles related to the robbery being investigated.

In the instant case, the assent to entry was in response to a request by two armed officers in uniform standing at defendant's open doorway, with the defendant on the outside. These circumstances alone make the purported consent to entry suspect. In *Parrish* v. *Civil Service Com.* (1967) 66 Cal.2d 260, 268, 269 [57 Cal.Rptr. 623, 425 P.2d 223], our Supreme Court speaking through Justice Tobriner has stated: ''With increasing frequency the courts have denied the efficacy of any consent to a search obtained by covert threats of official sanction or by implied assertions of superior authority. *The courts have been quick to note the disparity of position between a government agent and an ordinary citizen. . . .* 'The Government must show a consent that is ''unequivocal and specific'' [Citation], ''freely and intelligently given.'' [Citation.] Thus ''invitations'' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. [Citation.] A like view has been taken where an officer displays his badge and declares that he has come to make a search [citation], even where the householder replies, ''All Right.'' [Citation.] . . . Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent.' '' (Italics added.) (See also *People* v. *Ransome* (1960) 180 Cal.App.2d 140, 144 [4 Cal.Rptr. 347]; *People* v. *Davis* (1960) 178 Cal.App.2d 887, 893 [3 Cal.Rptr. 465]; *Oliver* v. *Bowens* (9th Cir. 1967) *supra,* 386 F.2d 688, 691.)

Furthermore, the record is completely silent about the defendant's background or experience. He apparently did not even know enough to ask the officers if they had a warrant. There is nothing to show that defendant knew he had the right to refuse entry to the officers and that such refusal could not be used as affirmative evidence against him. (Cf. *Tompkins* v. *Superior Court* (1963) *supra,* 59 Cal.2d 65, 68 [slamming of a door on an officer seeking entry cannot be used to convert suspicion into probable cause to arrest]; *People* v.

*Cedeno* (1963) 218 Cal.App.2d 213, 227-229 [32 Cal.Rptr. 246].) Defendant in our case was approaching the open doorway to get back into his room with the two officers standing just outside that open doorway; not much choice was open to him.

I am aware that some cases have stated, e.g., *People* v. *Chaddock* (1967) 249 Cal.App.2d 483, 485-486 [57 Cal.Rptr. 582], that "[t]he mere asking of permission to enter and make a search carries with it the implication that the person can withhold permission for such an entry or search." This is not an invariable implication and cannot be so implied absent other evidence of the surrounding circumstances, e.g., the age, physical size, experience, and background of the person asked to consent. It is a common practice for a superior to use language sounding in terms of a polite request, when he actually intends it to be and it is so interpreted by the requestee, that an imperative is meant.

Furthermore, in this case the officers went through the formality of seeking defendant's consent to their entry into defendant's room knowing that he did not have full knowledge of the facts. It was not police ingenuousness or inadvertence that when Officer Jobe asked defendant, "if we may come inside and talk to him" he did not tell him why they wanted to talk to him or why they wanted to enter his room.[6a] By the officer's own testimony, there were other people in the hallway but not close enough to hear their conversation. So the element of avoiding any embarrassment to defendant by having the conversation overheard was absent. On cross-examination, Jobe was asked, "Did you tell the defendant

[6a]Even with a search warrant, a peace officer may not forcibly enter a house, without first giving *notice* of his authority and *of his purpose.* (Pen. Code, § 1531; *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706]; *People* v. *Cain* (1968) 261 Cal.App.2d 383, 391 [67 Cal.Rptr. 922].) Where he has a warrant of arrest or reasonable and probable cause to arrest without a warrant, under section 844 of the Penal Code he must demand admittance and *explain the purpose for which admittance is desired* in the absence of "a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence" (*People* v. *Rosales* (1968) 68 Cal.2d 299, 302, 305 [66 Cal.Rptr. 1, 437 P.2d 489]). "Accordingly, a peace officer may not enter through an open door of a house without first demanding admittance and explaining the purpose for which admittance is desired. . . ." (*People* v. *Beamon* (1968) 268 Cal.App.2d 61, 65 [73 Cal.Rptr. 604]; cf. *People* v. *White* (1969) 270 Cal.App.2d 680, 682 [76 Cal.Rptr. 104]; and see *People* v. *Tellez* (1968) 268 Cal.App.2d 375, 377 [73 Cal.Rptr. 892] (dictum contra).) While these cases involve the preliminary foundation for a forcible entry, they enunciate a legislative and judicial policy of requiring advance notice of the purpose for which a peace officer seeks entry into a home.

why you wanted to enter his room?'' He replied, ''Not before I entered, no.'' Following the officer's testimony, ''I asked if we might come inside and talk to him and he said yes,'' he was asked: ''You did not then advise him why you wanted to talk to him?'' His answer was, ''Not until I got inside.'' The factors to be considered in consenting to an entry for purposes of a general exploratory talk and for purposes of a specific accusation that defendant has narcotics in the very room to which the officer is seeking to gain entrance are materially different, to put it mildly.

''There can be no waiver where the one against whom it is asserted has acted without full knowledge of the facts. It cannot be presumed, in the absence of such knowledge, that there was an intention to waive an existing right.'' (*Hacker Pipe & Supply Co.* v. *Chapman Valve Mfg. Co.* (1936) 17 Cal.App.2d 265, 274 [61 P.2d 944].) In fact, in this case, the consent to enter was obtained by ''fraud.'' A consent obtained by half-truths or silence knowing that the consent is being given under mistake, fraud, or duress is invalid. (See Prosser on Torts (3d ed. 1964) pp. 100, 711, 712.) ''The 'fraud' usually said to be involved in such a case may be simply the advantage taken of the [consenting party's] ignorance to injure him.'' (Prosser, *op. cit. supra*, p. 106.) It requires no sophistication to gather from the record in this case that the real purpose of the officers was to get inside defendant's room to observe or search, rather than to talk to him. They sought to accomplish their objective in this unwarranted manner even though they could have obtained a search warrant quite easily. The indications from the officer's testimony that they had information from a reliable informant, suggest it would have sufficed to obtain a search warrant. (*United States* v. *Ventresca* (1965) 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]; *People* v. *Gallardo* (1966) 244 Cal.App.2d 105 [52 Cal.Rptr. 777].) There is no showing that this information was received after the courts had closed for the day. They arrived at the hotel around 5:30 p.m. There was no consent, freely and intelligently given, to enter the defendant's room. And to so hold where the securing of a warrant was feasible is not to hamstring law enforcement. An analogous situation was presented in *People* v. *Haven* (1963) *supra*, 59 Cal.2d 713, 719-720. It was there held that where the real object of the officers for entering upon premises is search and not arrest, the arrest may not be used as a pretext to search for evidence; the search conducted under such circum-

stances is not reasonable within the meaning of the Fourth Amendment.

Having gained entry by an invalid consent, the subsequent consent to a search even if freely and voluntarily given would have been the product of an illegal entry. (*People* v. *Henry* (1967) *supra*, 65 Cal.2d 842, 846; *People* v. *Haven* (1963) *supra*, 59 Cal.2d 713, 718.) The movements of the defendant to hide three hand-rolled cigarettes cannot be used as furtive movements corroborating the informant's information. ''When officers seek to justify a seizure without a warrant on the ground that no search was involved, the objects so seized must have been 'in plain view of the officer *who has a right to be in the position to have that view . . .*' and must have been 'fully disclosed and open to the eye and hand.' '' (Italics added.) (*People* v. *Marshall* (1968) 69 Cal.2d 51, 57-58 [69 Cal.Rptr. 585, 442 P.2d 665].) Here the officer did not acquire the right to be standing in defendant's room to make a view of that movement. Nor did he see any hand rolled cigarettes until he had demanded that defendant hand over the wax-paper bag which defendant was at that juncture holding at his side. (Cf. *People* v. *Hodson* (1964) 225 Cal. App.2d 554, 558 [37 Cal.Rptr. 575].)

## III.

Even if we assume arguendo that the consent to entry was valid, the purported consent to search defendant's room was not free and voluntary. There was hesitation in defendant's reply. Note his use of ''well'' in his replies. Immediately after giving that hesitant verbal assent, but before the officers had commenced the search, defendant went to his dresser and grabbed a wax-paper sandwich bag on top of it. ''[C]onduct on the part of a defendant subsequent to his giving an apparent consent to a search may establish that the apparent consent was not voluntarily given.'' (*People* v. *Garcia* (1964) 227 Cal.App.2d 345, 351 [38 Cal.Rptr. 670].) The action negates free and intelligent conferring of a privilege. Under such circumstances, there was no free and voluntary consent to search the room. (Cf. *People* v. *Shelton* (1964) *supra*, 60 Cal.2d 740, 745; *Castaneda* v. *Superior Court* (1963) *supra*, 59 Cal.2d 439, 443; *People* v. *Haven* (1963) *supra*, 59 Cal.2d 713, 720; *People* v. *Escollias* (1968) 264 Cal.App.2d 16, 18 [70 Cal.Rptr. 65], opinion of Stephens, J.) Nor could the search and seizure be justified otherwise as being incidental to a lawful arrest on reasonable and probable cause.

## IV.

When the police have grounds and opportunity to obtain a search warrant, but choose to travel the alternate route of consent, they assume the risk of their investigative endeavors being rendered nugatory. (*People* v. *Currier* (1965) *supra*, 232 Cal.App.2d 103, 111.) They assume a quasi-judicial task of themselves deciding at the scene and in course of investigation whether they have obtained a valid consent. "[T]he officer engaged in the often competitive enterprise of ferreting out crime" in making a split-second decision is bound to make more errors than a "neutral and detached magistrate" passing upon an application for a warrant. (Cf. *People* v. *Marshall* (1968) *supra*, 69 Cal.2d 51, 57.)

In justifying a consent in a judicial proceeding the People have the burden of putting on record sufficient facts of the surrounding circumstances from which it may be determined that an apparent consent was in fact and in law freely and intelligently given. (*People* v. *Gorg* (1955) 45 Cal.2d 776, 782 [291 P.2d 469].) The record in this case does not reflect a fulfillment of this burden. Without such requirement there can be no judicial safeguards against invalid consents. Nor can the possibility that the informant placed the three hand-rolled cigarettes on the dresser be overlooked.

Reaching the conclusion set forth above, it is unnecessary to determine whether an admonition of one's rights under the Fourth Amendment must be given before any consent or waiver of such rights may be found.[7] (*People* v. *Henry* (1967) *supra*, 65 Cal.2d 842, 846.) It goes without saying that if such rights were explained to an accused, he would have little hope of attacking the validity of his consent upon appeal.

## V.

For the reasons set forth in this dissenting opinion, I would reverse the judgment (order granting probation).

A petition for a rehearing was denied May 1, 1969, and appellant's petition for a hearing by the Supreme Court was denied June 18, 1969.

---

[7]Several Court of Appeal decisions have held it unnecessary. (E.g. *People* v. *Roberts* (1966) *supra*, 246 Cal.App.2d 715, 728-729; *People* v. *Chaddock* (1967) *supra*, 249 Cal.App.2d 483, 485; *People* v. *Richardson* (1968) 258 Cal.App.2d 23, 31 [65 Cal.Rptr. 487]; cf. *People* v. *Lyles* (1968) 260 Cal.App.2d 62, 67-68 [66 Cal.Rptr. 799].)